STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JEROME W. GARDNER, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DWIGHT MASON, DEFENDANT-APPELLANT.

Argued October 21, 1968—Decided May 6, 1969.

*Mr. Dino D. Bliablias* argued the cause for defendant-appellant Jerome W. Gardner (*Mr. Bliablias* on the brief; *Messrs. Stein, Bliablias and Goldman,* attorneys).

*Mr. Joseph A. Hayden* argued the cause for defendant-appellant Dwight Mason.

*Mr. Donald Coburn,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Robert A. Baime,* Assistant Prosecutor, of counsel and on the brief; *Mr. Joseph P. Lordi,* Prosecutor of Essex County, attorney).

The opinion of the court was delivered by

SCHETTINO, J.   These are direct appeals by defendants Jerome Gardner and Dwight Mason who, along with Franklin D. Gilchrist, were tried jointly on indictments for murder. On November 7, 1966, the jury returned verdicts finding defendants Gardner and Mason guilty of murder in the second degree, and each was sentenced to a term of 25-30 years in

the New Jersey State Prison. Gilchrist received sentence of 20–25 years on his *non vult* plea entered during trial.

We have examined the numerous issues raised by Gardner and Mason on this appeal and find them without merit. We find it necessary to discuss only three of the contentions in which defendants allege reversible error: (1) the failure to follow the procedural guidelines of *State v. Young*, 46 *N. J.* 152 (1965), where an oral out-of-court statement by one co-defendant is to be used in a joint trial; (2) the use in a joint trial of evidence admissible against one defendant (Mason) but inadmissible against the others; and (3) the denial of a motion for mistrial following the *non vult* plea of one of the codefendants (Gilchrist) who thereafter testified for the State.

We refer to the testimony on behalf of the State. On the evening of October 31, 1965, Franklin Gilchrist (stepson of the deceased), his wife Caroline, and his mother Dorothy Hill (wife of the deceased) met Thurlow Hill (the deceased) in a local tavern. After spending some time bar-hopping, Gilchrist, Caroline and Mrs. Hill "ditched" Hill, and returned to Gilchrist's apartment. Hill arrived at the apartment somewhat later, but was denied entrance because of an argument between himself and Mrs. Hill.

Subsequently, Gilchrist learned that his stepfather was threatening to call the police about a series of robberies in which Gilchrist, Gardner and Mason allegedly had been involved. When Hill again said he was going to the police, Gilchrist went to Mason's house and informed him of the threats which Hill had made. Gilchrist told Mason to bring his "piece" (gun), and the two returned to the apartment. In Mason's presence, Hill again threatened to inform the police.

Gilchrist, Mason and Hill left the apartment in Mrs. Hill's car and drove to Gardner's apartment, where Gardner was told of Hill's intention to go to the police. Gardner got in the car with the other men, and after driving for some time, during which time the defendants tried to dissuade Hill

from going to the police, Gardner finally said, "I guess we have to take him out." Gilchrist then heard two clicks, and turned to see Gardner holding what appeared to be a .32 revolver which Gilchrist and Mason had purchased in Virginia. Gardner then asked Mason for his "piece," and immediately thereafter three shots were heard by Gilchrist. Gilchrist then drove to Keasby, N. J., where the trio disposed of the body.

Upon returning to Newark, Gilchrist dropped Gardner off at his apartment and returned to his own apartment with Mason. At the apartment Mrs. Hill observed blood on Mason's trousers. The next morning Gardner and Gilchrist attempted to remove blood stains from the car, and when their efforts were only partially successful they abandoned the car in New Brunswick. Gilchrist, Mason and Mrs. Hill retrieved the car the next day.

Four days later, the body of Thurlow Hill was discovered in Keasby. Gilchrist was picked up on November 8, 1965, and questioned about the death of his stepfather. On the basis of information supplied by him, Mason and Gardner were arrested, and search warrants were obtained authorizing the police to search the apartments of Gardner and Mason. The ensuing searches uncovered ammunition, a .38 caliber gun, and some money from Mason's home, and ammunition, .32 and .38 caliber guns, and some money from Gardner's home.

Because of the extent of distortion in the bullets which killed Hill, a ballistics comparison was not possible. The bullets were identified as .38 caliber slugs, however, and the State did succeed in demonstrating that the .32 caliber gun had recently misfired.

Much of the testimony was supplied by Franklin D. Gilchrist. The events leading up to his testimony began shortly after commencement of the trial when the State sought to introduce *oral* admissions made to the police by each of the defendants. The trial was interrupted, and a lengthy *Miranda* hearing outside the presence of the jury

was begun. This hearing culminated in the exclusion of only those out-of-court statements made by defendants Gardner and Mason.

When the trial resumed, the State introduced testimony on the oral admissions made by Gilchrist. Thereafter, in exchange for promises that his sentence would not exceed that for second degree murder and that the prosecutor would move to dismiss eight armed-robbery indictments pending against him, Gilchrist entered a plea of *non vult* and promised to testify for the State in accordance with the statement he had given to the police. The court cautioned the jury that Gilchrist's plea was not to be considered in any way as evidence against the remaining defendants. Subsequently, Gilchrist appeared as a State's witness and testified against the two remaining defendants. During his testimony the court disclosed to the jury the various promises made in connection with the *non vult* plea. This disclosure followed a discussion at the side bar out of the hearing of the jury where it was agreed that the record of what transpired in connection with Gilchrist's plea should be read to the jury.

As a result of a letter sent by the prosecutor to the court and defense counsel indicating that the written admissions of the defendants would not be used at the trial, no pretrial *Young* hearing had been ordered by the court. That letter did not refer to the oral admissions ostensibly on the ground that the *Young* rationale applies only to written admissions. *Young* applies to oral as well as written statements. Indeed there may be added difficulty in assuring effective deletion of implicating passages where oral admissions are involved, *Bruton v. United States,* 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed. 2d* 476, 484 *n.* 10, 490 (1968). We have no doubt, however, that the pretrial procedures set out in *Young* must be followed where an oral out-of-court statement is to be offered in evidence at the trial. Two of the cases cited in *Young* supporting the conclusion that effective deletion of implicating portions is necessary involved oral admissions. *Kramer v. United States,* 317 *F. 2d* 114 (*D. C. Cir.* 1963);

*People v. Aranda,* 63 *Cal. 2d* 518, 47 *Cal. Rptr.* 353, 407 *P. 2d* 265 (1965). And see *United States v. Lipowitz,* 4 *Crim. L. Rptr.* 2451 (*3d Cir.* Feb. 20, 1969) (where the testimony of an agent to whom one defendant had confessed was so carefully restricted that no other defendants were implicated thereby, thus rendering *Bruton* inapplicable).

In *State v. Young, supra,* 46 *N. J.* 152, we established the procedure to be followed in a joint trial where the State intends to introduce a defendant's confession which implicates his codefendants. We noted that all resulting problems should be resolved prior to trial, and that the prosecutor must move

"for a judicial determination of whether there can be an effective deletion of all references to the codefendants without prejudice to the confessing defendant. By effective deletion we mean the elimination of not only direct and indirect identification of codefendants but of any statements that could be damaging to the codefendants once their identity is otherwise established. * * *" 46 *N. J.,* at 159.

Since our decision in *Young,* the United States Supreme Court has decided *Bruton v. United States, supra,* 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed. 2d* 476, reaffirming our stated belief that cautionary instructions are incapable of obviating the potentiality for prejudice inherent in untested out-of-court statements. *State v. Young, supra,* 46 *N. J.,* at 157. In so doing, the Supreme Court expressly overruled the earlier rule which had allowed the use of confessions without deletions in joint trials if the trial judge gave clear instructions on the limited use of that confession. *Bruton v. United States, supra,* 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed. 2d,* at 479.

*Bruton* rests on the denial of the Sixth Amendment right of confrontation made applicable to the states by the Fourteenth Amendment (*Pointer v. Texas,* 380 *U. S.* 400, 88 *S. Ct.* 1065, 13 *L. Ed. 2d* 923 (1965)). See *Bruton, supra,* 391 *U. S.,* at 136, 88 *S. Ct.,* at 1628, 20 *L. Ed. 2d,* at 485, where the Supreme Court stated:

> "Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. * * *
>
> Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. * * *"

Following *Bruton,* a confession is inadmissible in a joint trial unless all portions which implicate defendants other than the declarant can be effectively deleted. In *Bruton* the majority opinion did not discuss the possibility of deleting the implicating portions other than to point out in a footnote that some courts have followed that procedure. 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed. 2d,* at 484 *n.* 10. However, Mr. Justice White indicated in his dissenting opinion that effective deletion will be necessary to avoid the exclusion in joint trials of all extrajudicial confessions which implicate defendants other than the declarant. 391 *U. S.* 123, 88 *S. Ct.* 1620, 20 *L. Ed. 2d,* at 489.

Because Gilchrist testified in the instant case, and reiterated the evidence previously introduced through the testimony on his out-of-court oral admission (including what the trial court had deleted), the *Young* and *Bruton* cases are inapplicable. He having testified, we need not consider whether the deletions would have been effective.

Gilchrist's decision to take the stand and testify on the subject matter of the oral admissions attributed to him subjected him to cross-examination by his codefendants. It follows, therefore, that Gardner and Mason have been adequately afforded their Sixth Amendment right of confrontation, and any alleged error committed by the introduction of the oral admission was cured. In *Santoro v. United States,* 402 *F. 2d* 920 (*9th Cir.* 1968), the appellant alleged error in the introduction into evidence of the out-of-court state-

ments (some oral and some written) of three codefendants implicating appellant in the crime. *Bruton* was distinguished on the grounds that the declarants took the stand and testified to the same evidence recited in their previously introduced out-of-court statements. By affirming their prior statements the declarants had subjected themselves to cross-examination, thus rendering *Bruton* inapplicable. We agree with *Santoro*. Accord *Lipscomb v. State,* 5 *Md. App.* 500, 248 *A. 2d* 491 (*Md. Ct. Spec. App.* 1968) (where the Court distinguished *Bruton* on the grounds that the confessing codefendant testified and subjected himself to cross-examination — his testimony conformed to his oral confession).

■ Nor do we find reversible error in the receipt of testimony by La Verne Haynes, a friend of Mason. Miss Haynes' testimony, admissible against Mason, but inadmissible as to Gardner, related that on her second visit to Mason, subsequent to his incarceration, he allegedly stated that Hill was killed because of his threats to go to the police. As stated in *Bruton v. United States, supra,* 391 *U. S.,* at 135, 88 *S. Ct.,* at 1627, 20 *L. Ed. 2d,* at 484: "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions * * *." The ultimate inquiry in determining whether a probability of prejudice resulted revolves around the ability of the jury to comply with the court's limiting instructions so as to give each defendant the independent considerations that the just administration of the criminal law demands. See *State v. Pickles,* 46 *N. J.* 542, 567 (1966); *State v. Hall,* 55 *N. J. Super.* 441, 449-50 (*App. Div.* 1959).

In *State v. Mayberry,* 52 *N. J.* 413 (1968), *certiorari* denied, 393 *U. S.* 1043, 89 *S. Ct.* 673, 21 *L. Ed. 2d* 593 (1969), the testimony of a girl friend of defendant Kestner was inadmissible as to the other defendants. In denying a claim that this constituted prejudicial error, we noted that sufficient limiting instructions were given, and that Kestner himself testified, subjecting himself to cross-examination on this point. Both of these factors are present here. We con-

clude, therefore, that there was no error in the admission of the challenged evidence here.

Defendants also attribute error to the trial court's refusal to grant a mistrial following the plea of *non vult* by Gilchrist. The gist of this challenge revolves around a fear that the jury may have placed disproportionate weight on this development in the trial, especially in light of the close association demonstrated by the three defendants prior to Gilchrist's plea.

The acceptance of guilty pleas during trial and the appearance of the pleader as a witness against his codefendants are not rare occurrences, and, in themselves do not require a mistrial. For example, see *United States v. Kimbrew*, 380 *F. 2d* 538 (*6th Cir.* 1967); *Tomlinson v. United States*, 93 *F. 2d* 652 (*D. C. Cir.* 1937), *certiorari* denied 303 *U. S.* 642, 646, 82 *L. Ed.* 1102, 1107, 58 *S. Ct.* 645, 745 (1938); *Commonwealth v. Sousa*, 350 *Mass.* 591, 215 *N. E. 2d* 910 (1966); *Commonwealth v. Giacomazza*, 311 *Mass.* 456, 42 *N. E. 2d* 506 (1942).

When a codefendant changes his plea during trial, the proper procedure for the trial court is to give cautionary instructions to the jury on the impact of that plea as it affects the remaining defendants. See, *e. g., Freije v. United States*, 386 *F. 2d* 408 (*1st Cir.* 1967); *United States v. Kahn*, 381 *F. 2d* 824 (*7th Cir.*), *certiorari* denied 389 *U. S.* 1015, 88 *S. Ct.* 591, 19 *L. Ed. 2d* 661 (1967); *Koolish v. United States*, 340 *F. 2d* 513 (*8th Cir.*), *certiorari* denied 381 *U. S.* 951, 85 *S. Ct.* 1805, 14 *L. Ed. 2d* 724 (1965). The trial court here did just that.

The trial court properly denied the motions for mistrial. Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.