571 A.2d 948

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. STEPHEN J. MUNIZ, DEFENDANT-RESPONDENT.

Argued October 24, 1989—Decided March 26, 1990.

320

*Larry R. Etzweiler,* Deputy Attorney General, argued the cause for appellant (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney).

*Daniel A. Warshawsky,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

The opinion of the Court was delivered by

HANDLER, J.

This appeal poses the question of whether, in a criminal prosecution for the third-degree crime of death by auto under the New Jersey Code of Criminal Justice, the Motor Vehicle Act offenses of reckless driving and careless driving are lesser-included offenses that should be submitted to the jury in conjunction with its determination of guilt or innocence on the death-by-auto charge. The case comes to the Court following defendant's conviction of death by auto in the Law Division and the reversal of this conviction by the Appellate Division substantially for the reason that the trial court failed to submit to the jury the lesser included motor vehicle violations of reckless or careless driving. We granted the State's petition for certification. 113 *N.J.* 658, 552 *A.*2d 179 (1988).

I.

The facts are relatively uncomplicated. J & L Auto Body Shop (J & L), located in Long Branch, advertises that it will pay "top cash" for junk cars and trucks. In response to these ads, on November 6, 1985, Joseph Quirk telephoned J & L and

stated that he wished to sell two vehicles, a Toyota car and a Chevy pick-up truck. J & L then sent Kevin Arkenau and Stephen Muniz, the defendant, to Mr. Quirk's residence to inspect the vehicles.

Muniz and Arkenau arrived later that day and purchased the vehicles. They towed the Toyota away, planning to retrieve the truck the next day. On November 7, Arkenau and defendant arranged to have the Chevy truck registered and insured. After first acquiring a battery for the truck from J & L, the two men and Donald Oliver, another employee of the body shop, arrived at Quirk's home at approximately 11:30 a.m. Arkenau installed the battery and defendant performed a "four corner inspection" of the truck, which included a visual inspection of the brake pads. Defendant drove the Chevy truck, Arkenau rode as a passenger, and Oliver drove the vehicle in which the men had driven to Quirk's residence. Enroute to Long Branch, defendant stopped to purchase a pint of brake fluid. After pouring one-third of the pint into the rear brake chamber, defendant continued the trip. Defendant was driving about fifty miles per hour in the fast lane of Highway 36. As he approached one of the intersections, the traffic light turned yellow. Defendant accelerated in order to "beat the light." John Farrington, the driver of a Datsun traveling on Appleton Avenue, proceeded into the intersection with Highway 36 when the light turned green in his favor. Before Farrington cleared the intersection with Highway 36, defendant's truck hit the Datsun. Farringon subsequently died as a result of the ensuing injuries.

The Middletown Police took defendant to the station immediately after the accident and read him his *Miranda* rights. In neither of the two statements defendant gave to the police did he mention any problems with the truck's brakes or the purchase of brake fluid.

Indicted in one count for death by auto, *N.J.S.A.* 2C:11–5, defendant was prosecuted on the theory that he operated the

truck recklessly when he knew the brakes were faulty and when he attempted to run the red light. The trial court instructed the jury only on death by auto; no instruction was given or requested on lesser-included offenses. After the jury found defendant guilty of death by auto, the court sentenced him to an indeterminate term at a Youth Correctional Institution.

On appeal, the primary issue the Appellate Division considered was whether the vehicular offenses of reckless driving, *N.J.S.A.* 39:4–96, and careless driving, *N.J.S.A.* 39:4–97, must be submitted to the jury as lesser-included offenses of death by auto. In a reported decision, the Appellate Division determined that those vehicular offenses were lesser-included offenses, and, therefore, the trial court's failure to submit those offenses to the jury was plain error warranting reversal. 228 *N.J.Super.* 492, 495, 550 *A.*2d 487 (App.Div.1988).

Defendant had presented two other arguments to the Appellate Division—that prosecutorial misconduct denied him a fair trial and that he should be resentenced to a probationary term instead of a custodial term. 228 *N.J.Super.* at 495–96, 550 *A.*2d 487. The court concluded that the prosecutor's comments to the jury were manifestly inappropriate, and admonished him to refrain from any similar comments on retrial. *Id.* at 500, 550 *A.*2d 487. It found it unnecessary to address defendant's argument that he should have received a probationary sentence. *Ibid.* The Attorney General then superseded the Monmouth County Prosecutor and filed a motion for reconsideration, which was granted. On reconsideration, the Appellate Division addressed only the issue of the lesser-included offenses, and reaffirmed its reversal of defendant's conviction. *Id.* at 501, 550 *A.*2d 487. This single issue was the focus of the State's petition for certification, which, as noted, the Court granted, while denying defendant's cross-petition for certification. 113 *N.J.* 658, 552 *A.*2d 179.

## II.

The Code, under *N.J.S.A.* 2C:1–8d, specifies the standards for determining which offenses are lesser-included offenses. That section provides in part that "[a]n offense is ... included [in an offense charged] when ... [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." That test calls for a comparison of the statutory definitions of the respective offenses to ascertain whether they have common or overlapping elements that require proof of identical facts.

The statutory definition of death by auto is set forth in *N.J.S.A.* 2C:11–5a, which states that "[c]riminal homicide constitutes death by auto when it is caused by driving a vehicle recklessly." "Recklessness" is specifically defined by the Code as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.... [*N.J.S.A.* 2C:2–2b(3).]

Reckless driving is defined under the Motor Vehicle Act as follows:

> A person who drives a vehicle on a highway heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of reckless driving.... [*N.J.S.A.* 39:4–96.]

The Motor Vehicle Act also proscribes careless driving. A person is guilty of careless driving when he or she "drives a vehicle on a highway carelessly, or without due caution and circumspection, in a manner so as to endanger [ ] a person or property...." *N.J.S.A.* 39:4–97.

In considering whether reckless driving is a lesser-included offense of death by auto, the Appellate Division observed that "[t]he only real difference between the two offenses is that a defendant's reckless driving must be shown to have caused the

death of another to sustain a conviction for death by auto." 228 *N.J.Super.* at 497, 550 *A.*2d 487. Therefore, the court concluded, "the proof required to establish death by auto is also sufficient to establish every element of reckless driving, which makes the latter offense a lesser-included offense of the former." *Ibid.* The court further determined that careless driving, *N.J.S.A.* 39:4–97, is a lesser-included offense of reckless driving, and therefore of death by auto, because the former offense "differs from driving recklessly ... only in that it involves a lesser degree of culpability." 228 *N.J.Super.* at 498, 550 *A.*2d 487. We concur in the court's analysis of the interrelatedness of these several offenses. Under the Code test of *N.J.S.A.* 2C:1–8d, the motor vehicle offenses of reckless and careless driving would qualify as lesser offenses that are included within the Code crime of death by auto.

■ *N.J.S.A.* 2C:1–8d, however, does not expressly mandate the joinder of motor vehicle offenses as such in a criminal prosecution for death by auto under the Code. It has been noted that "[m]andatory joinder under *N.J.S.A.* 2C:1–8 is inapplicable to motor vehicle offenses." *State v. Calvacca*, 199 *N.J.Super.* 434, 440, 489 *A.*2d 1199 (App.Div.1985). We have specifically ruled in a variant context that motor vehicle violations do not constitute "offenses" within the meaning of the Code and that generally Code provisions do not apply to the prosecution of motor vehicle offenses. *See State v. Hammond*, 118 *N.J.* 306, 311, 571 *A.*2d 942 (1990) (*N.J.S.A.* 2C:1–14k, which defines an "offense" to mean "a crime, a disorderly person offense or a petty disorderly person offense ...," does not include the motor vehicle offense of drunk driving); *State v. Macuk*, 57 *N.J.* 1, 9, 268 *A.*2d 1 (1970) (a motor vehicle offense "is not considered a 'criminal prosecution' ") (citing *State v. Zucconi*, 93 *N.J.Super.* 380, 384–87, 226 *A.*2d 16 (App.Div.1967), *aff'd*, 50 *N.J.* 361, 235 *A.*2d 193 (1967)).

The Appellate Division acknowledged that the Code did not mandate the joinder of these respective offenses, but deter-

mined that the common law, apart from the Code, would require such joinder. It reasoned that "[t]he lesser included offense doctrine is not legislative in origin but rather was well recognized at common law," and that "*N.J.S.A.* 2C:1-8d was intended to codify, and in certain respects to expand, this common-law doctrine as applied to offenses covered by the Code." 228 *N.J.Super.* at 499, 550 *A.*2d 487.

The policies of the common law strongly commend the joinder of lesser-included, as well as other related, offenses in a single criminal prosecution. "[I]t is not only more efficient but more just to dispose of the entire matter with finality in a single proceeding in which the fact-finder may conscientiously determine whether the defendant is guilty or not guilty...." *State v. Saulnier,* 63 *N.J.* 199, 207-08, 306 *A.*2d 67 (1973); *State v. Bell,* 55 *N.J.* 239, 243, 260 *A.*2d 849 (1970); *State v. Lopez,* 160 *N.J.Super.* 30, 37, 388 *A.*2d 1273 (App.Div.1978). This policy animates the Code itself. 1971 *New Jersey Penal Code Commentary,* Vol. II at 24 (hereafter *Code Commentary*) (courts shall abandon attempts at patching piecemeal litigation after the fact "in favor of a straightforward rule requiring a single prosecution.").

The principles governing joinder of lesser and related offenses in general encompass both indictable and nonindictable offenses. For purposes of joinder, there is "no sound reason for distinguishing between lesser included offenses which are indictable and those which are not." *State v. Saulnier, supra,* 63 *N.J.* at 207, 306 *A.*2d 67; *see State v. Lopez, supra,* 160 *N.J.Super.* 30, 388 *A.*2d 1273. *N.J.S.A.* 2C:1-8d itself states that "[a] defendant may be convicted of an offense included in an offense charged *whether or not the included offense is an indictable offense.*" (Emphasis added.) The emphasized words were included in Subsection d "to make it perfectly clear that any lesser included offense may and should be charged to the jury." *Code Commentary, supra,* at 25.

In light of the general doctrine of joinder, the Appellate Division, understandably, concluded that the motor vehicle offenses, as lesser-included offenses of death by auto, were required to be joined in a criminal prosecution of death by auto. However, it went further; it also ruled that the motor vehicle charges had to be submitted to and decided by the jury in conjunction with its determination of the death-by-auto charge.

The Appellate Division reasoned that the purpose of the lesser-included-offense doctrine is not simply to achieve efficiency and economy, but to assure fairness in the fact-finding process at trial through the avoidance of the coercive prejudice of an all-or-nothing verdict. 228 *N.J.Super.* at 502, 550 *A.*2d 487; *see State v. Christener,* 71 *N.J.* 55, 72, 362 *A.*2d 1153 (1976) ("our reconsideration of the 'all-or-nothing' instruction has been grounded on the coercive effect which it potentially exerts on jury deliberations") Thus, the injustice of an "all-or-nothing" presentation of a criminal offense to a jury or fact-finder with respect to a defendant who may in fact be guilty of only a lesser offense that is not charged is that the defendant will be found guilty of a crime he did not commit or he will be acquitted of a crime he did commit. *See State v. Sinclair,* 49 *N.J.* 525, 543, 231 *A.*2d 565 (1967); *State v. Mathis,* 47 *N.J.* 455, 467, 221 *A.*2d 529 (1966); *State v. Lopez, supra,* 160 *N.J.Super.* at 36, 388 *A.*2d 1273.

Nevertheless, the Appellate Division's conclusion that the jury would be required to determine motor vehicle offenses together with the death-by-auto charge is not consistent with *State v. DeLuca,* 108 *N.J.* 98, 527 *A.*2d 1355 (1987), or supported by *State v. Dively,* 92 *N.J.* 573, 458 *A.*2d 502 (1983). In *DeLuca,* this Court held that successive prosecutions for death by auto and for driving while intoxicated (DWI) would be barred by principles of double jeopardy if the prosecutions were based on the same evidence. 108 *N.J.* at 109, 527 *A.*2d 1355. To resolve this problem, this Court directed that the indictable charge of death by auto and the Title 39 motor vehicle charge of drunk driving be joined in a single trial but that the jury

would decide guilt on the death-by-auto charge and the judge, exercising the jurisdiction of the municipal court, would decide the DWI charge. *Id.* at 111, 527 *A.*2d 1355. In *Dively,* this Court acknowledged that reckless driving was a lesser-included offense of death by auto, and recognized that for purposes of double jeopardy, a completed municipal court prosecution of the lesser-included motor vehicle violation could bar a subsequent criminal prosecution for death by auto, notwithstanding the fact that a municipal court determining the motor vehicle offense lacks jurisdiction over the indictable offense. To overcome the dilemma posed by the bar of double jeopardy, the Court ruled that the Superior Court, which has jurisdiction over the indictable offense, should also exercise jurisdiction over the lesser-included offense. *State v. Dively, supra,* 92 *N.J.* at 587, 458 *A.*2d 502; *see* Administrative Director of the Courts Directive 10–82 (May 3, 1983) (confirming the practice endorsed by the Court in *Dively). Dively,* however, is silent with respect to whether the non-indictable, lesser-included motor vehicle offense should be submitted to the jury together with the greater, indictable offense or should be separately determined by the trial judge.

The Appellate Division, understanding that *DeLuca* did not support its position and *Dively* did not authorize it, reasoned that those cases involved the doctrines of double jeopardy and compulsory joinder, which are "broader than the circumstances in which a lesser offense not charged in an indictment must be submitted to a jury." 228 *N.J.Super.* at 502, 550 *A.*2d 487. It determined that *DeLuca* intended only to expand the scope of the compulsory-joinder doctrine in requiring the addition of Title 39 motor vehicle offenses, and simply did not deal with the lesser-included-offense doctrine in terms of whether the *same* trier of fact must determine both offenses. The Appellate Division then concluded that resolution of the specific issue of *how* a determination is to be made with respect to the joinder of the lesser included Title 39 offenses was governed by the common law and, particularly, the decision of *State v. Saulnier, supra,* 63 *N.J.* 199, 306 *A.*2d 67. The court believed that

this authority required the submission of both the motor vehicle offense and the death by auto offense to the jury. 228 *N.J.Super.* at 503–04, 506, 550 *A.*2d 487. We disagree with that conclusion because the common law does not give the court a free hand to resolve this issue.

In *Saulnier, supra,* a pre–Code case, defendant was indicted for the high misdemeanor of possession of twenty-five grams or more of marijuana or five grams or more of hashish. 63 *N.J.* at 202, 306 *A.*2d 67. Because of lack of evidence, the court instead continued the trial on the lesser-included disorderly-persons offense of possession of less than twenty-five grams of marijuana or less than five grams of hashish. This Court observed that "the common law doctrine of lesser included offenses is of course applicable," and that the trial court did not err by convicting the defendant on the lesser-included disorderly-persons offense. *Id.* at 207, 306 *A.*2d 67. However, what now appears to be significant in *Saulnier* is that it was a non-jury case; the same factfinder—the judge—was already empowered to determine the greater offense. The case did not involve the question of whether the determination of lesser included Title 39 motor vehicle violations may be submitted to a jury in conjunction with its determination of indictable offenses.

The Appellate Division also cited *State v. Sloane,* 111 *N.J.* 293, 544 *A.*2d 826 (1988), and *State v. Bowens,* 108 *N.J.* 622, 532 *A.*2d 215 (1987), for the proposition that this Court's recent trend has been to apply the lesser included offense doctrine even more expansively than in *Saulnier.* 228 *N.J.Super.* at 504–05, 550 *A.*2d 487. Neither case, however, touches remotely on the issue of whether a motor vehicle offense, even if a lesser-included offense of an indictable crime, must be determined by a jury that also is to determine the crime.

In addition, the Appellate Division relies on *State v. Lopez, supra,* 160 *N.J.Super.* at 36–37, 388 *A.*2d 1273, as support for its conclusion that lesser-included offenses must be submitted to the jury if the jury is the finder of fact. 228 *N.J.Super.* at

502, 504, 550 A.2d 487. In *Lopez*, defendant was indicted for breaking and entering and larceny. 160 *N.J.Super.* at 32, 388 A.2d 1273. In the ensuing trial, the larceny charge was dismissed and the court submitted the breaking-and-entering charge to the jury. *Id.* at 35, 388 A.2d 1273. However, the judge retained the lesser-included disorderly-persons offense of stealing property valued at $200 or less " 'for determination by the court under the principles ... set forth in *State v. Saulnier*,' 63 *N.J.* 199 [306 A.2d 67] (1973)." *Ibid.* On appeal, the Appellate Division reversed, ruling that if on the evidence a jury could find guilt on a lesser-included offense, then the trial court must generally charge the jury with both the lesser-included offense and the greater offense. *State v. Lopez, supra,* 160 *N.J.Super.* at 36–37, 388 A.2d 1273. However, even if *Lopez* is persuasive of its own holding, it does not govern the result to be reached in this case because it did not deal with motor vehicle offenses.

In reaching its conclusion, the Appellate Division here failed to give sufficient weight to the clear legislative mandate that motor vehicle offenses be enforced in accordance with the standards of Title 39 itself. The Code itself sharply distinguishes between offenses that are governed by the Code and Title 39 offenses, which generally are not. *State v. Hammond, supra,* 118 *N.J.* 306, 571 A.2d 942; *State v. Zucconi, supra,* 93 *N.J.Super.* 380, 226 A.2d 16. With respect to motor vehicle offenses, we have observed in a somewhat different context that "[t]here is no right to indictment or to a jury under any circumstances and such matters are tried in the first instance in a summary manner in the Municipal Court." *State v. Macuk, supra,* 57 *N.J.* at 9–10, 268 A.2d 1 (1970). The joinder provisions of the Code itself do not dictate the prosecution of motor vehicle offenses. *State v. Calvacca, supra,* 199 *N.J.Super.* 434, 489 A.2d 1199. Thus, the disposition of motor vehicle offenses is statutorily committed to the municipal court within the framework of a long-standing, firmly-fixed regulatory scheme.

The Appellate Division also noted the proposal of the Supreme Court Committee on Criminal Practice concerning *Rule 3:15–3*. *Report of the Supreme Court Committee on Criminal Practice for Proposed Rule 3:15–3*, 122 *N.J.L.J. Index* 116–17 (1988) [hereafter *Rule Report*]. *Rule* 3:15–3 deals with the mandatory joinder for trial of indictable and nonindictable charges arising from the same conduct, and states that "the Superior Court judge shall sit as a municipal court judge on the complaint," but the criminal offenses, the disorderly-persons offenses and the petty-disorderly-persons offenses charged in the complaint must be submitted to the jury. *R.* 3:15–3(a)(2). The Appellate Division felt that the *Rule Report* dealt exclusively with the doctrine of compulsory joinder and not lesser-included offenses. 228 *N.J.Super.* at 505, 550 *A.*2d 487. However, the Committee addressed the lesser-included-offense doctrine and, in fact, endorsed its expansion. It specifically considered the necessity for determining whether lesser-included offenses were to be decided by judge or jury, and proposed that lesser-included motor vehicle offenses be submitted to the judge and not the jury. 122 *N.J.L.J. Index* at 116 c. 4.[1]

We are in this matter guided by the legislative policy reflected not only in the Code but under Title 39. That policy is to distinguish and separate the prosecution of motor vehicle violations from the criminal prosecution of other offenses under the Code. Hence, we conclude that with respect to the joinder of lesser-included offenses, the Code standards do not permit,

---

[1]The Committee recommended that:

(2) Regardless of whether a jury sits as the finder of facts with respect to the criminal offense, and unless the complaint charges a disorderly persons offense or a petty disorderly persons offense which must be submitted to the jury in accordance with the provisions of *N.J.S.A.* 2C:1–8(e), the Superior Court judge shall sit as a municipal court judge on the complaint and shall render the verdict with respect to the complaint on the proofs adduced in the course of trial.

\* \* \* \* \* \* \* \*

[122 *N.J.L.J. Index* at 116, c. 2–4.]

and common-law policies do not require, the simultaneous submission to and disposition by a jury of motor vehicle violations in conjunction with its determination of offenses under the Code. Accordingly, we now hold that lesser-included motor vehicle offenses, if supported by evidence in the record, should be joined in the prosecution of the Code offense of death by auto and, by appropriate instructions, should be brought to the attention of the jury but should be determined by the judge.

It remains important, in this context, to address the concerns surrounding the possibility of an all-or-nothing verdict that would generally counsel the disposition of all available charges by the same trier of fact. See discussion, *supra* at 326–327, 571 *A.*2d at 952–953. The statutory and policy reasons that militate in favor of the joinder of all included and related offenses can and should be given as much effect as possible, but they must be consistent with the legislative directive that motor vehicle violations be determined within the framework of Title 39. We determine that this can be accomplished if the jury is advised when the indictable offense is submitted to it that there are lesser-included motor vehicle offenses, the determination of which will be the sole responsibility of the court. An explanation to the jury that there are lesser-included motor vehicles offenses to be determined by the judge will in some measure mitigate the potential coercive influence of an all-or-nothing charge, and will reduce the likelihood of the all-or-nothing verdict. *See State v. Concepcion*, 111 *N.J.* 373, 381, 545 *A.*2d 119 (1988). It will at the same time preserve the regulatory integrity of Title 39 as contemplated by the Legislature.

We are confident that a jury is capable of understanding such an instruction. Our criminal jurisprudence relies heavily on the jury's ability to comprehend and willingness to follow instructions from the court. *State v. Manney*, 26 *N.J.* 362, 368, 140 *A.*2d 74 (1958); *see, e.g., State v. Freeman*, 64 *N.J.* 66, 68–69, 312 *A.*2d 143 (1973) (in joint trial, danger of guilt by association alleviated by instruction to consider each defendant's guilt separately); *State v. Gardner*, 54 *N.J.* 37, 46, 252 *A.*2d 726

(1969) (where a co-defendant changes plea to guilty during joint trial, instruction on the impact on remaining defendants sufficient). Juries have been asked to apply instructions posing greater intellectual challenges than presented by our decision in this case. *E.g., State v. Vick,* 117 *N.J.* 288, 566 *A.*2d 531 (1989) (jury must determine under clear instructions if the prosecution has proven every element of offense even where defendant does not contest their existence); *State v. Collier,* 90 *N.J.* 117, 124, 447 *A.*2d 168 (1985) (same); *State v. Ragland,* 105 *N.J.* 189, 193–94, 519 *A.*2d 1361 (1986) (jury can be instructed to reconsider guilt of an offense it found in prior proceeding in assessing a different but related charge); *State v. Ingenito,* 87 *N.J.* 204, 220, 432 *A.*2d 912 (1981) (same). We have also been confident in a jury's ability to follow instructions with respect to the possible penal consequences, if any, of its verdict of guilt. *E.g., State v. Conforti,* 53 *N.J.* 239, 244, 250 *A.*2d 6 (1969) ("In making its determination, the jury should not be influenced by a consideration of what will be the result of its verdict, nor should its attention be distracted from its chief function.") (quoting *State v. Bell,* 102 *N.J.Super.* 70, 75–76, 245 *A.*2d 370 (App.Div.), *certif. denied,* 52 *N.J.* 485, 246 *A.*2d 447 (1968) (citations omitted)). Thus, in an appropriate case, where the evidence supports a lesser-included motor vehicle violation, the jury will know with such an instruction that its disposition of the offenses submitted to it will not necessarily be the ultimate determination of the defendant's guilt or innocence relating to the conduct that has given rise to the prosecution.

■ In reaching this conclusion, we are mindful that the Appellate Division felt that "denying a defendant an opportunity to have the jury consider his guilt of a lesser included offense would raise substantial constitutional questions." 228 *N.J.Super.* at 505, 550 *A.*2d 487. A charge that makes the jury aware of available motor vehicle offenses will sufficiently address these due process concerns, while concomitantly bestowing the corresponding benefit of avoiding a possible compromise verdict. *See Beck v. Alabama,* 447 *U.S.* 625, 637, 100

*S.Ct.* 2382, 2389, 65 *L.Ed.*2d 392, 402–03 (1980) ("While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process ... the failure to give the jury the [option] of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.").

■ We are satisfied, moreover, that in reserving the motor vehicle violations for the court, the judge will be guided by the evidence adduced. If, however, the factual finding represented by the jury's verdict necessarily constitutes a nonfinding of the factual predicate for the Title 39 offenses, the court would then be precluded by double jeopardy principles from reexamining the same body of evidence to come to a contrary conclusion. *Illinois v. Vitale,* 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980); *State v. DeLuca, supra,* 108 *N.J.* at 108–09, 527 *A.*2d 1355; *State v. Dively, supra,* 92 *N.J.* at 581, 458 *A.*2d 502.

### III.

■ The remaining issue is whether the failure to have joined the motor vehicle offenses and to have given the jury an appropriate instruction concerning such offenses constitutes reversible error. The Appellate Division, as noted, believed that it was reversible error not to have permitted the jury to determine the motor vehicle offenses. *Supra* at 321, 571 *A.*2d 950. However, the critical question this case now poses is whether failure to apprise the jury of the existence of other possible motor vehicle charges, which would be determined only by the judge, invalidated its verdict of guilt of death by auto.

This question implicates initially whether there was a rational basis for a factfinder's consideration of these lesser motor vehicle charges—be it a judge or a jury. In this case, the death of Mr. Farrington and the causation of that death were not in dispute. Both were proven to be a direct result of defendant's reckless driving. Because of the lack of any dispute over the causation of the death, the State argues that no rational basis existed for an alternative verdict convicting defendant of reck-

less driving, the lesser-included offense, but not death by auto, the greater offense. The question under our ruling, however, is whether there was a rational basis for the judge to have determined defendant was guilty of the motor vehicle offenses, and whether the jury should have been made aware of such a possibility. If that two-fold question is answered in the affirmative, the final inquiry is whether the failure to so instruct the jury constitutes plain error, an error "clearly capable of producing an unjust result." *R.* 2:10–2. That error must be such to generate the possibility of an unjust result "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon,* 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971).

We are, on this record, unable to conclude that the absence of an instruction, which we now will authorize in the prosecution of such cases, contributed to an unjust result. As noted, the jury was carefully instructed on the elements of recklessness and its determination of reckless driving was essential to the finding of guilt of the death-by-auto charge. The facts were that defendant, fully aware that his vehicle had faulty brakes, was driving his vehicle at fifty miles per hour in the fast lane of a major highway and tried to "beat" a red light at a controlled intersection. In the factual context of this case, we perceive little likelihood, and entertain no reasonable doubt, that a jury aware of possible reckless or careless driving motor vehicles offenses, which would be decided separately by the judge, would have concluded that defendant was not reckless and was not guilty of the charge of death by auto.

### IV.

Reversed. The judgment of conviction is reinstated.

*For reversal and reinstatement* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance* —None.