**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3158-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SUDEEP KHETANI,

     Defendant-Appellant.

_____

Submitted January 11, 2021 – Decided February 16, 2021

Before Judges Messano and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-11-1302.

Douglas Herring, attorney for appellant.

Christopher L. C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A Middlesex County grand jury indicted defendant Sudeep Khetani for burglary, N.J.S.A. 2C:18-2, and endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2). The State contended defendant assaulted S.K. (Sally) in her car with her seven-year-old son in the back seat.[1] The indictment alleged that "in the course of committing" the burglary of Sally's car, defendant "purposely inflicted bodily injury" on her, thereby elevating the burglary from a third-degree to a second-degree crime. See N.J.S.A. 2C:18-2(b)(1) ("Burglary is a crime of the second degree if in the course of committing the offense, the actor . . . [p]urposely . . . inflicts, attempts to inflict or threatens to inflict bodily injury on anyone[.]"). In the same complaint-warrant that charged defendant with burglary, the State also charged defendant with simple assault, N.J.S.A. 2C:12-1(a)(1), a disorderly persons offense, and harassment, N.J.S.A. 2C:33-4(b), a petty disorderly persons offense.

The jury acquitted defendant of both counts of the indictment. However, sitting as the fact finder on the two non-indictable offenses in the complaint, the

---

[1] The indictment used the initials of the victim and her son, which we assume the State believed was authorized by Rule 1:38-3(c)(9) and -3(c)(12); those subsections exclude from public access the identities of victims or alleged victims of child endangerment and domestic violence. We will do the same, even though, as will be disclosed, Sally testified that she did not know defendant and, therefore, she was never a victim of domestic violence. See N.J.S.A. 2C:25-19(d) (defining the term "[v]ictim of domestic violence").

judge found defendant guilty of simple assault and harassment. After considering and denying what we construe was a motion for acquittal as to the non-indictable offenses on the sentencing date, the judge merged the two offenses and imposed only mandatory financial penalties on defendant.[2]

Defendant now appeals, raising the following points for our consideration:

POINT I

THE STATE VIOLATED THE RULE IN STATE V. GROSS BY USING THE DEFENDANT'S ALIBI NOTICE CERTIFICATION AS AN EXHIBIT IN THE STATE'S CASE-IN-CHIEF, WHERE THE DEFENDANT DID NOT PUT ON A CASE, WHICH IMPROPERLY SHIFTED THE BURDEN TO THE DEFENDANT.

POINT II

THE COURT ERRED IN NOT GIVING THE JURY THE LESSER INCLUDED SIMPLE ASSAULT AND HARASSMENT BECAUSE THE COURT HAD STRUCTURED THE BURGLARY CHARGE AS REQUIRING A LESSER INCLUDED CHARGE OF SIMPLE ASSAULT OR HARASSMENT.

POINT III

THE JURY'S VERDICT OF NOT GUILTY ON SECOND-DEGREE BURGLARY CHARGE IS COLLATERAL ESTOPPEL THAT PRECLUDED THE TRIAL JUDGE FROM MAKING A SECOND

---

[2] The judgment of conviction reveals that defendant received 490 days of jail credit at the time of sentencing.

3

DETERMINATION ABOUT A SIMPLE ASSAULT AND HARASSMENT OCCURRING INSIDE THE STRUCTURE BECAUSE THE ACQUITTAL OF THE BURGLARY CHARGE INCORPORATED THE ACQUITTAL OF THE SIMPLE ASSAULT AND HARASSMENT.

## I.

The testimony at trial revealed that on September 22, 2017, at approximately 3 p.m., Sally and her son left the Can Do Fitness Center and entered her car in the gym's parking lot. A white car stopped directly in front of hers, a man exited and approached. Sally had seen the man at the gym four or five times before, was "creeped out," because he had stared at her, but, she did not know his name. The man opened the driver's side door, punched Sally in the head, and said, "Who do you think you are making faces at me[?]" He then got back into his car and drove off.

Sally experienced some pain but suffered no visible injuries. She went back into the fitness center to report the incident, and, through the assistance of two of the gym's employees, she identified an internet photograph of defendant as her attacker. He had been a member of the fitness center but left several months earlier. Sally made an in-court identification of defendant as her assailant.

Sally's son also testified and generally corroborated his mother's version of events. However, when asked if he could identify the assailant in the courtroom, the boy pointed to juror number three.

Plainsboro Township Police Officer Patrick Miller testified that he responded to the fitness center and spoke with Sally, who described the assault and her assailant. The officer was supplied with a photo of defendant and a possible address; he responded to defendant's home and spoke with him. On cross-examination, in response to a specific question from defense counsel, the officer said defendant told him that he (defendant) had recently returned home from a different gym, the Princeton Fitness and Wellness Center (PFW Center). Officer Miller acknowledged his police report did not contain that information.[3]

Several weeks before trial, defendant served the State with a notice of alibi. Accompanying counsel's cover letter was defendant's signed certification, in which he asserted he was at the PFW Center on September 22, 2017, used his "key tag scan card" to enter that gym, and told police when they contacted him at his home "that [he] had just returned from the [PFW] Center." Attached to

---

[3] Officer Miller apparently tried to continue questioning defendant at his home, but defendant indicated he wished to speak with an attorney and any interrogation ceased. This information was not shared with the jury.

defendant's certification was a copy of his "key tag" and a printout of his "check-in history" at the PFW Center for September 22, 2017.

Before the State called its final witness, Detective Nicole Spezio of the Middlesex County Prosecutor's Office, the judge engaged counsel in an extended charge conference. Defense counsel included the model jury charge on alibi in his proposed final instructions, even though it appears from the record that he had already indicated defendant would not testify after the State rested.

Defense counsel objected to the prosecutor questioning the detective about the alibi certification and attachments. He argued the records from the PFW Center were hearsay, and the detective was not qualified to authenticate them as business records. See N.J.R.E. 803(c)(6). The prosecutor argued the certification and attachments were admissible pursuant to N.J.R.E. 803(b)(1).

> Prosecutor: I'm going to go under statement against party opponent. This is his entire statement that the State should be able to use. . . . [H]e adopts that statement when he says, "The certification that's attached thereto."
>
> So adopting that statement of what's in that check-in history, Your Honor, is a hearsay exception here. And we should be allowed, through a detective, to put on a defendant's statement, against . . . party opponent's interest.

6

The judge asked defense counsel why the investigator should not be permitted

to testify because "you want the alibi charge. Right?"

> Defense counsel: Your Honor, I didn't want the alibi. What I want is the Court to explain that [defendant's] not required – he's not required to put on any evidence.[4]

> . . . .

> Judge: But when you put a defense, you . . . put in a defense.

> . . . .

> Defense counsel: We are not putting on the [PFW Center] representative.

> Judge: But then – but how do you get that alibi?

> . . . .

> Defense counsel: Your Honor, <u>I looked at the alibi as because at this point, Officer Miller has testified. The evidence is out through Officer Miller's testimony</u>.

> . . . .

> We are not putting on the [PFW] Center representative. . . . This statement itself is hearsay. The fact that we provided hearsay to . . . the prosecution does not make it not hearsay.

> . . . .

---

[4] <u>See</u> <u>Model Jury Charge (Criminal)</u>, "Alibi" (revised May 12, 2008) ("The defendant has neither the burden nor the duty to show that he/she was elsewhere at the time and so could not have committed the offense.").

<u>If they want to read his statement, that's fine</u>. But to take it the next step of now we want to put on the business records established by a business that is not here to identify something and interpret it, because that's what they're going to have to do next.

. . . .

Judge: So I – I'm not understanding. You . . . asked me to give you an alibi, and I'm down with giving you an alibi because I don't want to stop you from having something. Five-oh really didn't do much, but you did everything for five-oh by giving them this printout. Do you know what I'm saying, [defense counsel]? . . . I want to look out for you, but then how can I . . . stop the State from saying an alibi was propounded and the State –

Defense counsel: Your Honor, . . . if we put on the evidence of the alibi for the jury, I would agree with you. <u>But if we are not putting on the evidence in the alibi, now the State wishes to take a certification that was provided, along with documents.</u> If we had provided anything, how does that make it admissible?

. . . .

It's still a business record. . . . The State noticed who the witness was that would testify to it. The State chooses not to bring the witness.

. . . .

They can't put on . . . <u>a detective to say . . . , "I received this document from the prosecutor that the defense had provided." There's no other way to do that,</u> other than –

8

. . . .

     – say I did an investigation I didn't do.  So they're going to say that [defendant] provided this document and this is what it says.  But that's still hearsay.  They need to put on the expert.  We gave them the information.  We didn't give them the foundation.

[(Emphasis added).]

The judge disagreed.  Without addressing defense counsel's argument that the attachments to the certification were business records and Detective Spezio could not authenticate them, the judge reasoned:

    [T]his witness has all the right in the world . . . to say . . . [d]uring the course of the investigation of this case, was it brought to your attention that [defendant] was . . . at that gym at such and such hour?  Yeah. . . . [A]nd did you drive from that place to that place?  Yes.  And how long did it take?

    Why . . . would that violate anyone's constitutional right?  They were provided information from you, and they acted.  They would have been jackasses not to do something.  You know what I'm saying?  So the – they're trying to block your little alibi.  They had to – they have to try something. . . . [A]s a matter of fact, they'd better.  I would expect that the State of New Jersey and every prosecutor in this State, who if they were told that there was an alibi and that the defendant was the wrong guy, that they would go out of their way and spend every resource available to confirm that they're prosecuting the right dude.

When Detective Spezio testified, she identified defendant's alibi certification, telling the jury it was received from defense counsel, and that it said defendant was a member of the PFW Center. Detective Spezio identified defendant's key scan tag from the copy that was attached to the certification. Relying on computer assisted dispatch records, the detective identified when the call for police assistance was made to the Plainsboro Police Department, and identified defendant's "check-in history" at the PFW Center for September 22, 2017, a copy of which, as noted, was also attached to the alibi certification. All three documents — defendant's certification, the copy of his key scan card, and the record of its use at the PFW Center on September 22, 2017 — were published to the jury at the prosecutor's request.

Detective Spezio testified that the incident was reported to police at 3:23 p.m. and defendant checked in at the PFW Center at 3:29 p.m. She further testified that it took six minutes to drive from the Can Do Fitness Center to the PFW Center, and approximately sixteen minutes to travel from the PFW Center to defendant's residence. On cross-examination, the detective acknowledged that everything stated by defendant in his certification was true.

In her closing argument, the prosecutor extensively referred to defendant's alibi certification and the attached exhibits. She asked the jury to infer that

defendant drove to the PFW Center after the assault to "change the way he looked" and "to clean himself up" after the assault.

As noted, the jury acquitted defendant of both counts in the indictment. When the court convened again several days later, it appears that defense counsel made two arguments before the judge imposed sentence.[5] We address them both here and in the following section of this opinion because the arguments are reiterated on appeal.

For the first time, defense counsel cited State v. Gross, 216 N.J. Super. 92 (App. Div. 1987), and argued it was error to permit the prosecutor to introduce defendant's alibi certification and attachments because defendant did not testify. The prosecutor responded by arguing "defense counsel was the one putting on that information. . . . He didn't have to do a thing." She noted that our decision in Gross found any error was harmless. See id. at 96–97. The judge never addressed the issue. Before us, defendant argues that because he exercised his right not to testify, it was reversible error for the judge to permit the prosecutor to introduce his alibi certification and attached exhibits.

---

[5] The January 25, 2019 transcript reveals there were court proceedings the day before. If they occurred on the record, appellant failed to provide us with any transcript. The judge entered his guilty verdict on the two non-indictable offenses immediately prior to imposing sentence without making any factual findings.

Rule 3:12-2(a) provides:

> If a defendant intends to rely in any way on an alibi, within [ten] days after a written demand by the prosecutor[,] the defendant shall furnish a signed alibi, stating the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

In Gross, the defendant did not testify at trial; however, the prosecutor admitted the defendant's alibi notice into evidence and, in summation, suggested that the jury did not hear from the alibi witness because "she didn't want to be a perjurer." 216 N.J. Super. at 95. We noted that the Rule's requirement "is for discovery purposes only, 'to avoid surprise at trial by the sudden introduction of a factual claim which cannot be investigated unless the trial is recessed to that end.'" Ibid. (quoting State v. Garvin, 44 N.J. 268, 272–73 (1965). "The rule 'is not designed to compel a defendant to say anything' but rather 'requires the specified pretrial disclosure if, but only if, the defendant plans to assert an alibi.'" Id. at 95–96 (quoting State v. Angeleri, 51 N.J. 382, 384–85 (1968)).

The State contends it never introduced the alibi documents into evidence; that is clearly wrong, as already noted. The State further argues that defendant in fact asserted alibi, the judge gave the jury the model charge on alibi and, therefore, there was no error in permitting the State to rebut the alibi through

12

Detective Spezio's testimony. See, e.g., State v. Irving, 114 N.J. 427, 434 (1989) ("The Constitution does not protect a defendant from the consequences of a defense he makes, nor assure him a right so to defend as to deny the State a chance to check the truth of his position."); State v. Noble, 398 N.J. Super. 574, 588–89 (App. Div. 2008) (affirming prosecutor's right to cross-examine defendant about contents of alibi notice). However, the State cites no case, and our research reveals none, that permitted the prosecutor to use a defendant's alibi statement as affirmative evidence when the defendant chose not to testify. Simply put, the prosecutor's stated reason at trial supporting admission of defendant's certification, i.e., it was a statement by a party opponent and admissible pursuant to N.J.R.E. 803(b)(1) even if defendant did not testify, is patently wrong.

We might agree, however, that under these circumstances, admission of defendant's alibi certification alone was harmless beyond a reasonable doubt. As defense counsel himself noted, every statement made by defendant in the actual certification was already before the jury via Officer Miller's testimony, and Detective Spezio acknowledged that every fact in the certification was true. Although not entirely clear from the extended colloquy cited above, defense

13

counsel appears to have consented "if [the prosecutor] wanted to read his" —
defendant's — "statement" to the jury.

However, the prosecutor characterized defendant as having "adopted" the
other exhibits — defendant's key scan tag and the PFW Center print-out —
because they were attached to the certification. To be clear, once defendant
furnished this additional information, the State had every right to investigate and
directly rebut the alibi or explain, as the prosecutor did, why it was not truly an
alibi at all, because defendant had enough time to commit the offense and then
proceed to the PFW Center. Detective Spezio's testimony about how long it
took to drive from place to place, for example, was properly admitted.

The documents that accompany defendant's certification, however, were
not admitted through independent proof adduced, for example, from witnesses
from the PFW Center who could have identified them as business records. See
N.J.R.E. 803(c)(6).[6] Rather, they were admitted through defendant's alibi
notice, even though defendant never testified. As a result, the prosecutor was
able to elicit from Detective Spezio that all the information was furnished by
defendant himself, and argue that defendant's own statements failed to

_____

[6] As noted, defense counsel made this specific objection, but the judge never addressed the issue.

A-3158-18

substantiate a claim that he could not have committed the assault because he was elsewhere when it occurred.

Of course, the jury acquitted defendant, so we must consider whether the improper admission of these documentary exhibits, portions of Detective Spezio's testimony identifying them and their source, and the inferences urged by the prosecutor prejudiced the judge's evaluation of the evidence against defendant. Unfortunately, we have no way of telling, because the judge failed to make any factual findings when he rendered his guilty verdicts.

Therefore, we reverse defendant's convictions and remand the matter to the trial court. The judge may not consider the documents attached to defendant's certification, those portions of Detective Spezio's testimony that led to their admission in evidence and any references in her testimony to the exhibits. The judge shall make factual findings and draw legal conclusions from the balance of the trial evidence and enter appropriate verdicts on the two offenses of simple assault and harassment. We do not retain jurisdiction.

II.

The arguments raised in Points II and III are related and must be addressed for the sake of completeness. Defendant contends it was error for the judge not to submit the simple assault offense to the jury because it is a lesser-included

15

offense of burglary. He also argues that because the jury acquitted him of second-degree burglary, the judge was collaterally estopped from finding defendant guilty of simple assault or harassment, which were both based on the alleged assault of Sally. See N.J.S.A. 2C:33-4(b) (defining harassment as the "striking, kicking, shoving, or other offensive touching" of another "with purpose to harass").

At the charge conference, defendant asked the judge to charge simple assault and trespass as lesser-included offenses of burglary. The prosecutor objected, arguing neither was a lesser-included offense. Defense counsel did not, however, object thereafter when the judge indicated he would render verdicts on the simple assault and harassment charge without advising the jury of his findings.

The judge concluded that State v. Muniz compelled him to be the trier of fact with respect to the two non-indictable offenses charged in a separate complaint. 118 N.J. 319, 322–23 (1990). However, in State v. Miller, we held that "where the proofs presented support inclusion of a disorderly persons offense as a lesser-included offense of an indictable offense, the lesser-included disorderly persons offense must be submitted for a jury determination." 382 N.J. Super. 494, 501 (App. Div. 2006) (citing N.J.S.A. 2C:1-8(e)). We noted

16

that the State's reliance on <u>Muniz</u> was mistaken, because "the prosecution of offenses under the Criminal Code, including disorderly offenses, is both distinguishable and separate from motor vehicle violations." <u>Id.</u> at 502 (citing <u>Muniz</u>, 118 N.J. at 332)).

The judge also cited <u>Rule</u> 3:15-3(a)(2), which authorizes "the Superior Court judge" to "sit as a municipal court judge on [a] complaint" for non-indictable offenses "[r]egardless of whether a jury sits as the finder of facts with respect to the criminal offense," but not if "the complaint charges [a non-indictable] offense that must be submitted to the jury in accordance with the provisions of N.J.S.A. 2C:1-8(e)[.]" The issue, therefore, is whether simple assault and harassment premised upon a striking of the victim are lesser-included offenses of burglary.

An offense will be considered a lesser-included offense in two circumstances: if "the proof required to establish a greater offense is also sufficient to establish every element of a lesser offense," or "where two offenses are the same but a lesser degree of culpability is required to establish the lesser offense." <u>State v. Thomas</u>, 187 N.J. 119, 129–30 (2006) (citing <u>State v. Muniz</u>, 228, N.J. Super. 492, 496 (App. Div. 1988)). In this case, unlike <u>Miller</u>, neither simple assault nor harassment are lesser-included offenses of burglary.

The elements of burglary are unauthorized "entry into a structure with the purpose of committing an offense." State v. Marquez, 277 N.J. Super. 162, 168 (App. Div. 1994). "Burglary requires only an entry 'with purpose to commit an offense,' irrespective of whether an offense is committed." State v. Mangrella, 214 N.J. Super. 437, 441 (App. Div. 1986) (quoting N.J.S.A. 2C:18-2(a)) (citing State v. Pyron, 202 N.J. Super. 502, 504–05 (App. Div. 1985)). In short, since one may be convicted of burglary without committing a simple assault or harassment, the greater crime does not include all the elements of the lesser offense.

The more troublesome question is whether the judge erred by not charging the jury with the elements of simple assault and requiring it to determine defendant's guilt because the simple assault was an element of the second-degree burglary for which defendant stood indicted. Generally speaking, "facts [that] will aggravate the crime of which a defendant is accused and enhance the punishment to which he will be subject are said to be an 'element' of the offense[.]" State v. Rodriguez, 234 N.J. Super. 298, 304–05 (App. Div. 1989) (quoting N.J.S.A. 2C:1-14(h)). Clearly, in order to have found defendant guilty of second-degree burglary, i.e., he inflicted bodily injury on Sally while burgling

her car, the jury would have had to find the State proved all the elements of simple assault.

However, if the actor commits "the intended offense" that elevates a burglary to a second-degree crime, "the offense itself is separately punishable." Pyron, 202 N.J. Super. at 504. We have rejected strictly construing an offense that raises the degree of another crime as a lesser included offense or element of the greater crime when it is clear that the intent of the Code was to provide separate punishment upon conviction of both offenses. See, e.g., State v. Adams, 227 N.J. Super. 51, 66 (App. Div. 1988) (rejecting merger of second-degree burglary into attempted aggravated sexual assault, even though burglary was "statutory element of aggravated sexual assault").

Moreover, the ratio decidendi for requiring instructions on a lesser-included offense is to avoid "the injustice of an 'all-or-nothing' presentation of a criminal offense to a jury or fact-finder with respect to a defendant who may in fact be guilty of only a lesser offense that is not charged is that the defendant will be found guilty of a crime he did not commit or he will be acquitted of a crime he did commit." Muniz, 118 N.J. at 327 (citing State v. Sinclair, 49 N.J. 525, 543 (1967)). "[C]oncerns surrounding the possibility of an all-or-nothing

verdict . . . would generally counsel the disposition of all available charges by the same trier of fact."  Id. at 332.

Here, however, the judge followed the model jury charge for burglary. Model Jury Charge (Criminal), "Burglary in the Second Degree (N.J.S.A. 2C:18-2b)" (rev. Mar. 14, 2016).  The model charge first provides instructions on third-degree burglary and specifically tells the jury that it must first find the State proved all the elements of burglary before considering the "additional element" that makes burglary a second-degree crime.  Id. at 3.

In this case, the verdict sheet required the jury to first determine defendant's guilt as to third-degree burglary and only proceed further to consider second-degree burglary – defendant caused bodily injury to Sally in the course of the burglary – if it found defendant guilty of burglary.  The jury unanimously answered the first interrogatory in the negative.  In other words, it never considered whether defendant committed a simple assault and never faced the possibility of an "all or nothing" verdict.  Under the circumstances, the failure to charge the jury on simple assault was not reversible error.

For the same reason, we reject defendant's collateral estoppel argument. Defendant claims that the jury's "acquittal" on the charge of second-degree

burglary collaterally estopped the judge from finding defendant guilty of the alleged underlying offenses of simple assault and harassment.

We have said that for collateral estoppel to apply in a criminal proceeding, the defendant must establish that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [State v. Brown, 394 N.J. Super. 492, 502 (App. Div. 2007) (quoting First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007)).]

As noted, the jury never reached the question of defendant's guilt on the underlying assault that the State alleged elevated the burglary to a second-degree crime. The determination of defendant's guilt of those offenses was not "essential" to the jury's verdict acquitting defendant of burglary.

We reverse defendant's convictions and remand the matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21