248 N.J. Super. 515 (1991)
591 A.2d 954
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JASPER KENNETH WHITE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 23, 1991.
Decided May 9, 1991.
*516 Before Judges PRESSLER and BAIME.
John R. Ford, attorney for appellant.
Chamlin, Rosen, Cavanagh, Uliano, Manna & Kreizman, attorneys for respondent (Charles J. Uliano and Sharon Lynch Norton on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
We granted defendant's motion for leave to appeal from the Law Division's denial of his application to dismiss a disorderly persons complaint charging him with assault and battery (N.J.S.A. 2C:12-la(1)). A jury had acquitted defendant previously of contempt involving essentially the same allegations as those contained in the disorderly persons complaint. We are satisfied from our review of the record of the first trial that the assault and battery alleged in the disorderly persons complaint is the same conduct for which defendant has already been prosecuted and acquitted. We also find that the evidence the State intends to present in the assault and battery prosecution is identical to that used previously in the contempt case. We thus hold that defendant has once been placed in jeopardy and cannot now be prosecuted for the same offense.
*517 The charges against defendant arose out of a bitter labor dispute between George Harms Construction Company (Harms) and Local 825 of the International Union of Operating Engineers concerning a construction project on Route 35. On August 15, 1988, Harms obtained a restraining order containing 11 paragraphs restricting the picketing activities of Local 825 and defendant, its business agent. Paragraph 10 prohibited the union and defendant from "committing any acts of violence, coercion, intimidation, threats or any unlawful action that directly or indirectly ha[d] the effect of causing Harms' employees ... not to enter [the] construction site." It is undisputed that defendant was aware of the restraining order and its contents.
On August 17, 1988, defendant became engaged in an altercation with Thomas Hardell, Harms' construction supervisor. Although the facts were hotly disputed, Hardell claimed that he displayed a copy of the restraining order and asked defendant whether he intended to interfere with his right to enter the job site. Defendant allegedly uttered an expletive and kicked Hardell in the groin. According to Hardell, other union members then participated in the attack.
Based upon these allegations and others not germane to this appeal, the Chancery Division issued an order to show cause charging defendant and the union with contempt and directing the Monmouth County Prosecutor to prosecute the case. Pursuant to N.J.S.A. 2A:15-56, the contempt charges were tried by a jury. Following a protracted trial, the jury found defendant and the union not guilty. In its special verdict, the jury acquitted defendant of violating paragraph 10 of the restraining order.
After the jury's verdict, defendant moved to dismiss the disorderly persons complaint which charged him with causing bodily injury to Hardell by kicking him in the groin. The municipal court held that the double jeopardy clause barred prosecution of the assault and battery complaint. However, *518 the State appealed to the Law Division which reversed the municipal court's order. Focusing on the statutory elements, the judge reasoned that each offense required proof of a fact that the other did not and that the evidence to be presented by the State in its attempt to prove assault and battery overlapped that submitted in the contempt trial but was not identical. The judge also determined that the second prosecution was not barred by collateral estoppel principles. We now reverse the order of the Law Division.
The Fifth Amendment proscribes multiple prosecutions for the same offense. While no one currently questions the great worth of this constitutional safeguard, difficulty arises in determining just when we are dealing with the "same offense" within the contemplation of that protection. In State v. Fraction, 206 N.J. Super. 532, 503 A.2d 336 (App.Div. 1985), we catalogued the varying approaches the courts have adopted in seeking to resolve the problem. Id. at 537-538, 503 A.2d 336. We noted that no single test had achieved universal acceptance, but the tendency was to eschew "technisms and inflexibility in favor of the paramount considerations of fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." Id. at 538, 503 A.2d 336 quoting State v. Currie, 41 N.J. 531, 539, 197 A.2d 678 (1964).
More recently, our Supreme Court attempted to clarify the applicable rules pertaining to double jeopardy. See State v. Yoskowitz, 116 N.J. 679, 563 A.2d 1 (1989); State v. DeLuca, 108 N.J. 98, 527 A.2d 1355 (1987), cert. den. 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); State v. Dively, 92 N.J. 573, 458 A.2d 502 (1983). Synthesizing several United States Supreme Court decisions on the subject, see, e.g., Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a two-pronged test was adopted in State v. DeLuca, 108 N.J. at 107, 527 A.2d 1355. The initial test to be applied, commonly known as the Blockburger standard, focuses upon the statutory elements and requires inquiry into "whether *519 each provision requires proof of an additional fact which the other does not." State v. DeLuca, 108 N.J. at 103, 527 A.2d 1355, quoting Blockburger v. United States, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. The Blockburger test is satisfied if each offense requires proof of a fact that the other does not, notwithstanding substantial overlap in the evidence presented. 108 N.J. at 103, 527 A.2d 1355; see also Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); Iannelli v. United States, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The clarity of the Blockburger test became beclouded by the Supreme Court's decision in Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), where principal scrutiny was given to the nature of the evidence presented in the first prosecution. Citing this approach, our Supreme Court adopted an alternative basis for determining whether multiple prosecutions involve the "`same' offense." 108 N.J. at 107-108, 527 A.2d 1355. The "second prong" of the test is "whether the evidence actually used to establish guilt in the first prosecution is identical to that that will be used in the second prosecution." Ibid.; see also State v. Dively, 92 N.J. at 581, 458 A.2d 502. As phrased by the Court, "[i]f the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred." State v. DeLuca, 108 N.J. at 107, 527 A.2d 1355.
With whatever disarming ease this formulation may be articulated, its application is not without difficulties. Perhaps this is best evidenced by our Supreme Court's most recent consideration of the problem in State v. Yoskowitz, which involved a relatively uncomplicated factual pattern and yet yielded four separate opinions. 116 N.J. at 682, 710, 711, 715, 563 A.2d 1. Moreover, the problems involved in deciphering whether multiple prosecutions involve the "same offense" have been accentuated by the United States Supreme Court's latest decision on the subject in Grady v. Corbin, ___ U.S. ___, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).
*520 In Grady, the Court adopted a two-pronged test similar to, but not identical with, that set forth in State v. Yoskowitz and State v. DeLuca. Initially, the Court reaffirmed the Blockburger standard, stating "[i]f application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred." ___ U.S. ___, 110 S.Ct. at 2086, 109 L.Ed.2d at 561. The Court observed, however, that "[t]he Blockburger test was developed `in the context of multiple punishments imposed in a single prosecution.'" Ibid., quoting Garrett v. United States, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985). In that setting, the Blockburger test was said to be simply a "rule of statutory construction, a guide to determine whether the legislature intended multiple punishments." Ibid. The Court reasoned that successive prosecutions raised concerns beyond merely the possibility of an enhanced sentence. Id. at ___, 110 S.Ct. at 2086, 109 L.Ed.2d at 562. Because the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, and since multiple prosecutions also give the government an opportunity to rehearse and refine its presentation of proof, thereby increasing the risk of an undeserved conviction, the Blockburger test was considered insufficiently protective of the rights of the accused. Ibid. The Court said that "any subsequent prosecution must do more than merely survive the Blockburger test." Id. at ___, 110 S.Ct. at 2043, 109 L.Ed.2d at 564. The Court thus held that, in addition, the double jeopardy clause "bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Ibid. The Court emphasized, however, that "[t]his is not an `actual evidence' or `same evidence' test." Ibid. Instead, "[t]he critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." Ibid.
*521 It is against this historical overview that we consider defendant's claim of double jeopardy. We confess that it is unclear whether the United States Supreme Court intended to retreat from the approach it had apparently taken in Illinois v. Vitale, and, if so, what impact that might have on the continuing vitality of State v. Yoskowitz and State v. DeLuca. If the Court meant no more than that "the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding," Grady v. Corbin, ___ U.S. at ___, 110 S.Ct. at 2093, 109 L.Ed.2d at 564; see Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), we discern no real departure from Illinois v. Vitale, and no reason to question whether our Supreme Court will continue to adhere to an approach which closely scrutinizes the proofs presented at the first prosecution and those to be offered in the second. What will remain is the test enunciated by our Supreme Court in State v. DeLuca, i.e., "[i]f the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred." 108 N.J. at 107, 527 A.2d 1355. (Emphasis added). See also State v. Yoskowitz, 116 N.J. at 693, 563 A.2d 1. If, on the other hand, Grady is read to eschew the approach adopted by our Supreme Court in DeLuca and Yoskowitz, the result is far less clear. Of course, New Jersey courts would be required to apply the Grady formula, if different from ours, and thus look closely at the conduct constituting the offense for which the defendant has already been prosecuted and compare it with the acts to be proven in the second prosecution. However, our Supreme Court could, in addition to the Grady standards, retain the tests adopted in DeLuca and Yoskowitz in cases in which those tests would preclude the second prosecution even if the Grady test would not. Although our courts have consistently interpreted the state constitution's double jeopardy protection as coextensive with its federal counterpart, see, e.g., State v. Dively, 92 N.J. at 578, 458 A.2d 502; State v. Barnes, 84 N.J. 362, 370, 420 A.2d *522 303 (1980); State v. Rechtschaffer, 70 N.J. 395, 404, 360 A.2d 362 (1976), our Supreme Court could conceivably depart from that policy and continue to apply the DeLuca and Yoskowitz standard, if yielding more expansive results.
Thus, it appears that at this point the actual contours of the double jeopardy prohibition remain beclouded. Nevertheless, we are satisfied that the present prosecution is barred under all conceivable tests.
First, the Blockburger test seemingly requires this result. Unfortunately, the problems attendant to a comparative review of statutory elements are compounded since the first prosecution was for contempt of a court order. See, e.g., United States v. Haggerty, 528 F. Supp. 1286 (D.Colo. 1981); United States v. United States Gypsum Co., 404 F. Supp. 619 (D.D.C. 1975); People v. Gray, 69 Ill.2d 44, 12 Ill.Dec. 886, 370 N.E.2d 797 (1977), cert. den. 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978); State v. Thompson, 294 Or. 528, 659 P.2d 383 (Or. 1983). The original prosecution was for criminal contempt under R. 1:10-2, although defendant was not charged with a fourth degree offense pursuant to N.J.S.A. 2C:29-9. In order to establish the offense of contempt, the prosecutor must prove beyond a reasonable doubt that the defendant purposely or knowingly disobeyed a judicial order. See In re Buehrer, 50 N.J. 501, 236 A.2d 592 (1967); Cannel, Title 2C: New Jersey Criminal Code Annotated, Comment N.J.S.A. 2C:29-9 at 495 (1991). However, for the purpose of applying the Blockburger test, it is important to determine the nature of the contempt; i.e., the specific judicial order allegedly violated. See State v. Thompson, 659 P.2d at 386; see also Colombo v. New York, 405 U.S. 9, 92 S.Ct. 756, 30 L.Ed.2d 762 (1972); People v. Gray, 12 Ill.Dec. at 889, 370 N.E.2d at 800. Here, defendant was prosecuted for purposely or knowingly violating a court order by using violence against another to prevent him from entering the job site. To that extent, the physical attack upon Hardell was one of the elements of the offense of contempt. Thus, assault and battery was a lesser-included offense of the contempt *523 and defendant's acquittal of contempt thereby barred the second prosecution. See Grady v. Corbin, ___ U.S. at ___ n. 11, 110 S.Ct. at 2093 n. 11, 109 L.Ed.2d at 564 n. 11; Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Acquittal of the greater offense precludes prosecution of the lesser-included crime. This is so even though the jury in acquitting defendant of the greater offense did not necessarily find him not guilty of the lesser crime. Unlike collateral estoppel, we are not concerned with findings necessarily made by the jury. Rather, we deal with the policy barring successive prosecutions, one for a greater crime and the second for a component offense. It is irrelevant for the purpose of double jeopardy whether the prosecution for the greater offense precedes the prosecution of the lesser crime. Grady v. Corbin, ___ U.S. at ___ n. 11, 110 S.Ct. at 2093 n. 11, 109 L.Ed.2d at 564 n. 11. In either case, the double jeopardy clause prohibits successive prosecutions.
Second, we are satisfied that the conduct for which defendant was initially prosecuted was essentially the same as that with which he is charged in the disorderly persons complaint. In order to establish the conduct alleged in the assault and battery complaint, the State must "prove conduct that constitutes [the] offense for which the defendant has already been prosecuted." Grady v. Corbin, ___ U.S. at ___, 110 S.Ct. at 2093, 109 L.Ed.2d at 557. By its own pleadings, the prosecutor has admitted that "it will prove the entirety of the conduct for which [defendant] was [acquitted]." Id. at ___, 110 S.Ct. at 2094, 109 L.Ed.2d at 565-566. Thus, defendant's prosecution for assault and battery is barred under the standard adopted in Grady v. Corbin.
Third, the evidence actually used in the prosecutor's attempt to prove the contempt "is identical to that that will be used in the second prosecution." State v. DeLuca, 108 N.J. at 107, 527 A.2d 1355. In terms of State v. DeLuca and State v. Yoskowitz, "the same evidence used in the first prosecution is the sole evidence in the second." 108 N.J. at 107, 527 A.2d 1355. The *524 "less abstract" test adopted by our Supreme Court compels dismissal of the disorderly persons complaint. Contrary to the prosecutor's argument, the fact that additional evidence was offered at the contempt trial to prove violation of other paragraphs of the court's order is wholly irrelevant. The situation is no different than the prosecution of a multi-count indictment at a trial followed by the prosecution of a lesser-included offense of one of the counts at a second trial. In each case, the same evidence used in the first prosecution is the "sole evidence" in the second. Ibid.
One final comment deserves attention before leaving the subject. We have thoroughly reviewed the transcript of the first trial. Our exhaustive examination of the record clearly discloses that the sole factual issue before the jury was whether defendant committed an assault and battery on Hardell. In an abstract sense, it is possible that the jury acquitted defendant for reasons other than its disbelief that he physically attacked the job supervisor. For example, it is conceivable that the jury found defendant was not aware of the court order, or that the attack upon Hardell did not interfere with the rights of workers to enter the job site. We are convinced from our reading of the transcript, however, that these were not seriously contested factual issues. In short, the gist of the contempt charge was that defendant physically attacked Hardell. The jury was not satisfied that the prosecutor's proofs established that offense beyond a reasonable doubt. Putting aside technical concepts of double jeopardy, it is plain to us that defendant was tried and acquitted of the "same offense" for which he is now being prosecuted. This is unfair and contrary to the design of the federal and state Constitutions.
The order of the Law Division is reversed and the disorderly persons complaint is hereby dismissed.