863 A.2d 1108 (2005)
374 N.J. Super. 199
STATE of New Jersey, Plaintiff-Respondent,
v.
Orlando COLON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 2004.
Decided January 11, 2005.
*1110 Yvonne Smith Segars, Public Defender, for appellant (Michael Confusione, Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Attorney General, for respondent (Debra A. Owens, Deputy Attorney General, of counsel and on the brief).
Before Judges WEFING, PAYNE and C.S. FISHER.
The opinion of the court was delivered by
PAYNE, J.A.D.
Defendant Orlando Colon appeals on constitutional, statutory and equitable double jeopardy grounds from his convictions, following the entry of conditional pleas of guilty, on charges of second-degree eluding, N.J.S.A. 2C:29-2b, second-degree aggravated assault while eluding, N.J.S.A. 2C:12-1b(6), and third-degree theft by unlawful taking of an automobile, N.J.S.A. 2C:20-3. Additionally, he appeals from concurrent sentences imposed on both the eluding and aggravated assault convictions of seven years with three and one-half years of parole ineligibility, claiming that those sentences were excessive.
*1111 We find no legal or equitable bar to defendant's convictions. However, we find the sentence imposed on defendant's conviction for second-degree aggravated assault while eluding, N.J.S.A. 2C:12-1b(6), to have been illegal, since neither an eighty-five percent period of parole ineligibility nor a three-year period of parole supervision was imposed as required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Because a legal sentence would require defendant to spend a greater period of time in custody than he is presently sentenced to serve, we remand the matter to permit defendant to seek to renegotiate or to withdraw his plea, or for resentencing.

I.
On July 30, 2001, defendant stole a Toyota Corolla that he found with the motor running and the keys in the ignition. Following a report of the theft, he was spotted by the police driving the car, was ordered to stop, failed to do so, and instead eluded the police officers who followed him. Defendant struck a bicyclist in the course of his ensuing flight, causing an occipital skull fracture. Following his arrest, defendant admitted to stealing a Shure transmitter and wireless microphone valued at $1,800, which were found in the trunk of the car.
Two narrative reports of the incident, prepared by Sergeant Steven Verdi, stated as follows:
Observed a silver Toyota Corolla traveling north on King St. matching a description of a stolen car which was being tracked by a representative of Lojack.... Vehicle was being operated by one male with no other occupants. Overhead lights and siren were activated in an attempt to pull vehicle over at which time vehicle went around other vehicles and continued, increasing speed in an apparent attempt to elude this officer. Suspect turned left off of King St. to proceed west onto Smith St.... As this officer turned onto Smith St., it was observed that there was a large amount of pedestrian and vehicular traffic further down Smith St. and the pursuit was immediately terminated and radioed in as such....
Suspect continued west bound on Smith St. driving recklessly weaving in and out of traffic. At this time, overhead lights and siren were shut off and pursuit was completely terminated. However this officer continued to follow in the direction of suspect in an attempt to observe his direction of travel. P.O. Harth was behind this officer following in vehicle 803 west on Smith St. When suspect was observed turning north on Maple St. against the one way, suspect was followed. However was approx. a half block ahead with vehicles in between and continued driving in an erratic manner. Headquarters was advised by radio of suspect's direction of travel. Suspect vehicle struck a male on a bicycle at the intersection of Maple St. and Fayette St. and continued westbound on Fayette St. This officer as well as P.O. Estrada who arrived on scene stopped to render aid to the bicyclist. Suspect crashed into a curb further west on Fayette St. where he was apprehended by P.O. Vargas and P.O. Harth.
Defendant was issued municipal court summonses for driving on the revoked list, N.J.S.A. 39:3-40, reckless driving, N.J.S.A. 39:4-96, traveling the wrong way on a one-way street, N.J.S.A. 39:4-85.1, and leaving the scene of an accident, N.J.S.A. 39:4-129(c). A citizen complaint was filed against him as the result of the theft of the radio components. Additionally, complaints were filed by the police charging the felonies of eluding, aggravated assault in violation of N.J.S.A. 2C:12-1(b)(1), theft of the Toyota, and receipt of the stolen radio. Defendant was unable to post bail, *1112 and remained in custody throughout the proceedings at issue.
On September 25, 2001, an indictment against defendant was filed that charged second-degree eluding, N.J.S.A. 2C:29-2b (count one), second-degree aggravated assault while eluding, N.J.S.A. 2C:12-1b(6) (count two), second-degree aggravated assault, N.J.S.A. 2C:12-1b(1) (count three), fourth-degree assault by auto, N.J.S.A. 2C:12-1c (count four), third-degree theft of a motor vehicle by unlawful taking, N.J.S.A. 2C:20-3 (count five), and receipt of stolen property (the radio components), N.J.S.A. 2C:20-7 (count six).
On September 26, 2001, one day after the indictment against him had been filed, defendant was brought from jail to the municipal court, where he pled guilty to the charges pending there of driving on the revoked list, reckless driving, and traveling the wrong way on a one-way street, as well as to a charge of failing to report an accident, N.J.S.A. 39:4-130, as amended from leaving the scene of the accident. Despite the fact that the complaint alleging receipt of stolen property valued the property at $1,800 thereby setting forth a basis for a crime of the third degree, and the pendency in the Law Division of an indictment for third-degree receipt of stolen property, the court, without jurisdiction (see N.J.S.A. 2B:12-19a), notice to the prosecutor or apparent authorization to do so[1] (see State v. Still, 330 N.J.Super. 50, 54-55, 748 A.2d 1153, 1155-56 (App.Div.), certif. denied, 165 N.J. 490, 758 A.2d 649 (2000)) downgraded the crime to a fourth-degree one,[2] to which defendant also pled guilty. Defendant was not represented by counsel while in municipal court, and the record does not reflect the presence of a prosecutor. Additionally, no factual basis was adduced for any of the guilty pleas. Sentences were imposed, consisting of various fines and penalties, sixty days loss of driving privileges, and a sixty-day jail term on the charge of receipt of stolen property.
Close to the conclusion of the proceedings, the municipal judge acknowledged on the record that defendant was presently in custody, and he asked: "What are you being held on now?" Defendant responded: "Drugs and burglary." No support for that statement appears in the record on appeal. The prior court history summary contained in defendant's presentence investigation report does not reflect any pending burglary charges.[3] It does reflect an open bench warrant from the criminal court of Kings County issued on December 12, 2000 as the result of charges of criminal possession of a controlled dangerous substance. Defendant was serving a one-year term of probation for shoplifting at the time of the crimes at issue.
The prosecution against defendant in the Law Division continued. On May 24, 2002, the trial court denied defendant's motion to dismiss the charges against him in counts one, two, three, five, and six of the indictment on double jeopardy grounds, finding the elements of the crimes charged in the indictment to be different from those underlying the municipal matters, and thus not barred by the federal constitution under the "same elements" test established *1113 by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 303-04, 52 S.Ct. 180, 181-82, 76 L.Ed. 306, 309 (1932) and reaffirmed in United States v. Dixon, 509 U.S. 688, 703-12, 113 S.Ct. 2849, 2859-64, 125 L.Ed.2d 556, 572-78 (1993). The trial court recognized that, prior to Dixon, the New Jersey Supreme Court had alternatively used a "same conduct" test that had been endorsed by the United States Supreme Court in a decision repudiated by Dixon. See Grady v. Corbin, 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548, 557 (1990). The trial court also recognized that in State v. Capak, 271 N.J.Super. 397, 403-04, 638 A.2d 918, 920-21 (App.Div.), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994), we declined to find, in the absence of dispositive precedent to the contrary, that the "same conduct" test was no longer applicable to a determination of double jeopardy under the New Jersey constitution. Nonetheless, the trial court made no determination of whether that test had been met in the present case. While rejecting the applicability of double jeopardy to most of the indictment, the trial court did grant defendant's motion to dismiss count four of that indictment, charging fourth-degree assault by auto, a charge that the State conceded was barred by double jeopardy principles as the result of defendant's plea in municipal court to reckless driving. In an order entered on June 12, 2002, the trial court memorialized these determinations, vacated defendant's municipal court conviction and sentence on the complaint of receipt of stolen property, and vacated defendant's municipal court convictions and sentences on the other charges contained in the various summons to which he had pled guilty  a matter that the court declared at the motion hearing to be dictated by considerations of fairness.
On April 4, 2003, defendant entered conditional pleas of guilty before a different Law Division judge to count one of the indictment (eluding), two (aggravated assault while eluding) and five (theft by unlawful taking of a motor vehicle). After establishing that he had stolen the car as a means to go home and that he ignored police attempts to stop him, defendant gave the following factual basis for his pleas:
[DEFENSE COUNSEL] FETKY: You drove away; correct?
THE DEFENDANT: Correct
MR. FETKY: How fast were you going?
THE DEFENDANT: The car had a flat tire.
MR. FETKY: How fast were you going?
THE DEFENDANT: About like 20, 25. 20 to 25 miles an hour.
MR. FETKY: Did you go through any stop signs? Did you run any red lights?
THE DEFENDANT: No.
MR. FETKY: Were you driving recklessly?
THE DEFENDANT: Yeah.
MR. FETKY: Did there come a point in time when you came in contact with a man?
THE COURT: Wait a minute. How were you driving recklessly?
THE DEFENDANT: I was driving on the flat tire, and I was swaying. I was swaying.
MR. FETKY: Were you going down the street swaying from side to side?
THE DEFENDANT: Uh-hum.
MR. FETKY: Did you cross the double yellow line maybe?
THE DEFENDANT: Yeah.
MR. FETKY: Did there come a point in time, where you hit someone on a bicycle?
THE DEFENDANT: Yes.
MR. FETKY: Did you see that person?

*1114 THE DEFENDANT: After I hit them, yes.
MR. FETKY: You didn't see them before you hit them? You weren't paying attention, were you?
THE DEFENDANT: No.
* * *
THE COURT: While you were driving, you were also under the influence?
THE DEFENDANT: Yes, your Honor.
* * *
[PROSECUTOR] SEWITCH: You knew the police wanted your car to stop? They were trying to stop you; correct?
THE DEFENDANT: Correct. I took off anyway. That is correct.
MR. SEWITCH: That happened around noontime? Sometime like 10:50 in the morning; correct?
THE DEFENDANT: Correct.
MR. SEWITCH: You were fleeing the police on Smith Street in Perth Amboy; correct?
THE DEFENDANT: Correct.
MR. SEWITCH: That is a main street in Perth Amboy? A main business district; correct?
THE DEFENDANT: Correct.
MR. SEWITCH: You got off of Smith Street and you drove down Maple Street; is that correct?
THE DEFENDANT: I went from Smith, down State, went through a parking lot, came around. That's when the officers came behind me and turned on their lights. And that's when I turned the corner, left, and I crashed into a curb, caught a flat, and I kept on going.
MR. SEWITCH: You, eventually, got onto Maple Street; is that correct?
THE DEFENDANT: Correct.
MR. SEWITCH: Where the collision occurred; is that correct?
THE DEFENDANT: Correct.
MR. SEWITCH: When the crash occurred on Maple Street, you were on a one-way street; is that correct?
THE DEFENDANT: Correct.
MR. SEWITCH: You were going the wrong way on Maple Street when the collision occurred?
THE DEFENDANT: Correct.
As we have stated, defendant was sentenced in accordance with the plea agreement, as approved by the prosecutor, to concurrent terms of imprisonment of seven years with three and one-half years of parole ineligibility on the eluding and assault charges, and to a five-year concurrent term on the theft charge.
On appeal, defendant raises the following arguments for our consideration:
POINT I THE TRIAL COURT ERRED IN REFUSING TO DISMISS THE INDICTMENT ON DOUBLE JEOPARDY GROUNDS.
POINT II THE TRIAL COURT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS TO COUNSEL AND SELF-REPRESENTATION AND IMPOSED AN EXCESSIVE BAIL.
POINT III DEFENDANT'S GUILTY PLEAS TO ELUDING, AGGRAVATED ASSAULT AND THEFT BY UNLAWFUL TAKING ARE INVALID.
POINT IV THE SENTENCE IMPOSED BY THE TRIAL COURT IS EXCESSIVE.

II.
Defendant concedes that principles of double jeopardy under the federal constitution do not bar his prosecution in the Law Division, because the "same elements" are not found in the crimes for which he was convicted in the earlier municipal court and the later Law Division proceedings.[4] That "same elements" test, *1115 he also concedes, has now been adopted by a majority of the United States Supreme Court as the sole means for determining the existence of double jeopardy under the federal constitution. See Dixon, supra, 509 U.S. at 703-12, 113 S.Ct. at 2859-64, 125 L.Ed.2d at 572-78 (Part IV of majority opinion by Justice Scalia, joined by Justice Stevens) in which Chief Justice Rehnquist and Justices O'Connor and Thomas also joined, 509 U.S. at 713-14, 720, 113 S.Ct. at 2865, 2868, 125 L.Ed.2d at 579, 583. However, defendant argues that the criminal charges to which he pled guilty in the Law Division were barred by the state constitution's double jeopardy clause, N.J. Const. art. I, ¶ 11,[5] statutory double jeopardy prohibitions and court rules regarding mandatory joinder of claims, and equitable considerations of fundamental fairness. The State argues to the contrary and contends additionally that deficiencies in the municipal court proceedings invalidated defendant's guilty pleas in that court.

a. The Municipal Court Proceedings

Double jeopardy concerns in the context of multiple prosecutions generally arise as the result of procedural bungling. Such was the case here. The municipal court proceedings occurring in this case were unquestionably irregular, and that irregularity contributed significantly to the difficulties that we face in resolving this appeal.
At all relevant times, Directive No. 10-82, issued by the Administrative Director of the Courts on May 3, 1983, was in effect. That directive, formulated in accordance with the Supreme Court's decision in State v. Dively, 92 N.J. 573, 589, 458 A.2d 502, 510-11 (1983), a decision that recognized that motor vehicle violations tried in municipal court are within those offenses subject to the double jeopardy clause (id. at 586, 458 A.2d at 509), requires, in instances in which a complaint had been filed in municipal court with respect to a Title 39 violation involving a motor vehicle accident resulting in death or serious bodily injury, that the municipal court judge or administrator notify the county prosecutor to afford the prosecutor the opportunity to determine if the accident involved an indictable offense. If so, the municipal court is directed to take no further action until the matter is presented to the grand jury, and if an indictment is returned, then the municipal charges are to be tried in the Superior Court. See also Directive No. 40-64, permitting Superior Court judges to sit as acting municipal court judges to dispose of matters referred to them; State v. Muniz, 118 N.J. 319, 571 A.2d 948 (1990) (holding that the right to a jury trial does not attach to the transferred municipal matters); R. 3:15-3 (governing trial of criminal offenses and lesser, related infractions). Although implementation of that directive provides some assurance that a defendant will not twice be placed in jeopardy for the same crime and offers safeguards against precipitate municipal court action, it is unclear in this case whether any of the summonses and complaints sufficiently apprised the municipal court of the existence of serious bodily injury so as to trigger the directive's procedures.
*1116 Significantly, however, the municipal court proceedings took place at a time after an indictment had been handed down charging defendant with crimes arising out of the same sequence of events. Thus, computerized records available in the municipal courts should, if consulted, have apprised the municipal judge of the status of charges against defendant. Inquiry of the prosecutor, had he been present, could have achieved the same goal. The necessity of such inquiry should have been evident, since defendant was in custody when he appeared in court and apparently was wearing prison garb. Defendant's unsworn statement regarding the charges that were holding him certainly was not dispositive in the circumstances.
Further, the indictment's charge of third-degree receipt of stolen property appears to have been factually identical to the downgraded fourth-degree charge to which defendant pled guilty in municipal court. There is no evidence that the prosecutor was advised of the municipal judge's determination to proceed on charges pending in that court, or that a proper waiver of indictment and trial by jury by defendant and consent by the prosecutor to a downgrade of the receipt of stolen property charge was obtained. See Still, supra, 330 N.J.Super. at 54, 748 A.2d at 1155; N.J.S.A. 2B:12-18 (requiring waiver of constitutional rights by defendant and consent by prosecutor to downgrade). We are satisfied that if the necessary waivers and consent to trial on the downgraded charges in municipal court were not obtained, any conviction for receipt of stolen property and sentence imposed were beyond the municipal court's jurisdiction and constituted a legal nullity. State v. LeJambre, 42 N.J. 315, 319, 200 A.2d 489, 491 (1964); Still, supra, 330 N.J.Super. at 55, 748 A.2d at 1156. However, the status of that charge is not relevant here since defendant received credit on his present sentence for any jail time spent as a result of that conviction, since that conviction does not serve as a basis for defendant's present double jeopardy arguments, and since the conviction was vacated by the Law Division judge.
Additional defects existed in the proceedings. Defendant was not afforded counsel, and the record does not disclose whether he was advised of his right to counsel in circumstances in which a jail term was imposed. State v. Gonzalez, 114 N.J. 592, 607, 556 A.2d 323, 330 (1989) (requiring such advice); Rodriguez v. Rosenblatt, 58 N.J. 281, 295-96, 277 A.2d 216, 223 (1971) ("whenever the particular nature of the charge is such that imprisonment in fact or other consequence of magnitude is actually threatened or is a likelihood on conviction, the indigent defendant should have counsel assigned to him unless he chooses to proceed pro se with his plea of guilty or his defense at trial"). No factual basis was given for defendant's plea as required by R. 7:6-2(a)(1). See also State v. Martin, 335 N.J.Super. 447, 450, 762 A.2d 707, 709 (App.Div.2000). Defendant's understanding of the plea, its voluntariness, and defendant's knowledge of its consequences were not established as R. 7:6-2(a)(1) demands (see also State v. Gale, 226 N.J.Super. 699, 704, 545 A.2d 279, 281 (Law Div.1988)), and defendant's appellate rights were not explained. See Martin, supra, 335 N.J.Super. at 451, 762 A.2d at 710; R. 7:13-1.
The State argues on appeal that deficiencies in the municipal court proceedings invalidated defendant's pleas of guilty there, and thus mooted his double jeopardy argument. We question whether this argument can properly be raised at this stage of the proceedings. We recognize that in a proceeding underlying the Court's disciplinary action against an attorney in In re Seelig, 180 N.J. 234, 850 A.2d 477 (2004), a municipal judge permitted *1117 the State to move to vacate the municipal court pleas of Seelig's client as the result of substantial defects in the proceedings similar to those present here and the manifest injustice that would occur if the pleas were permitted to stand, thereby barring on double jeopardy grounds defendant's indictment and prosecution for aggravated manslaughter and death by auto. Id. at 241, 850 A.2d at 481-82. The municipal judge's determination was affirmed on appeal to the Law Division and to us. Ibid. However, the procedure described in Seelig can be distinguished from the one before us, since there a motion to vacate the plea was filed promptly after the pleas were entered. Here, no such motion was ever filed, a procedural lapse that we find to be crucial. Further, we find that the trial court's order vacating the convictions and sentences imposed in municipal court on grounds of "fairness," following denial, in significant part, of defendant's double jeopardy motion does not moot the issues raised by defendant, finding no legal support for the order entered by the motion judge, except insofar as it applied to defendant's conviction for fourth-degree receipt of stolen property. We do not find in the circumstances that the municipal judge was deprived of jurisdiction of the remaining charges before him as the result of the indictment, because as we shall explain, we find no identity in the offenses charged. However, because the crimes arose out of a single chain of events, and because an indictment relating to those events had been handed down, to avoid the double jeopardy issues that have arisen, the municipal judge should not have proceeded, if at all, until disposition of the indictment or authorization from the prosecutor.

b. State Constitution

We next address defendant's claim to the protection of the double jeopardy clause of the state constitution. For a significant period of time, state precedent regarding the application of double jeopardy principles has mirrored federal precedent, and when the United States Supreme Court found that the existence of double jeopardy would be determined by looking at not only the elements of the crimes, the test adopted in Blockburger, supra, but also at the actual evidence to be presented at trial (see Illinois v. Vitale, 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228, 238 (1980) and Grady, supra, 495 U.S. at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557), our Supreme Court followed suit. See, e.g. State v. Yoskowitz, 116 N.J. 679, 690-92, 563 A.2d 1, 6-7 (1989); State v. DeLuca, 108 N.J. 98, 107, 527 A.2d 1355, 1359-60 cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); Dively, supra, 92 N.J. at 581-83, 458 A.2d at 506-07.
However, in Dixon, supra, the United States Supreme Court overruled Grady's holding that double jeopardy "bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Grady, supra, 495 U.S. at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557 (footnote omitted). It instead found double jeopardy to exist only upon satisfaction of Blockburger's "same elements" test. Dixon, supra, 509 U.S. at 703-12, 113 S.Ct. at 2859-64, 125 L.Ed.2d at 572-78. As we recognized in Capak, supra, the New Jersey Supreme Court has not similarly overruled the precedent that it established in DeLuca and Yoskowitz. 271 N.J.Super. at 403, 638 A.2d at 920-21. We stated there: "to the extent DeLuca and Yoskowitz may be understood to embody state constitutional principles, until our Supreme Court holds otherwise," we will continue to utilize the "same conduct" test. Capak, supra, 271 N.J.Super. at 403-04, 638 A.2d at 920-21. See also Russo v. N.J. Dept. of Corrections, 324 N.J.Super. 576, 586, 737 A.2d *1118 183, 188 (App.Div.1999) (noting that "the United States Supreme Court seems to have settled on a bright-line, but perhaps mechanistically sterile, approach," but declining to determine whether the New Jersey Supreme Court would follow that approach and finding that the defendant met neither a "same elements" or "same conduct" test); State v. White, 248 N.J.Super. 515, 521-22, 591 A.2d 954, 957-58 (App.Div.1991) (expressing uncertainty as to whether Grady constituted a retreat from Vitale, but observing that if it did, the New Jersey Supreme Court could depart from its practice of finding the State's double jeopardy protection to be coextensive with the federal one and could continue to apply Yoskowitz and DeLuca).
The State, without reference in this context to Capak or to Russo or White, urges us to forecast on the basis of prior statements by the New Jersey Supreme Court that the Court would, as matter of state constitutional interpretation, view double jeopardy through the narrowed lens reestablished by the United States Supreme Court in Dixon. It would thus, the State argues, hold that defendant's double jeopardy claim under state constitutional law is barred by his failure to meet Blockburger's"same elements" test. In support of that position, the State cites to a considerable body of precedent in which the Court has held that the State's constitutional double jeopardy protection is coextensive in principle and scope with federal guarantees. See, e.g., State v. Loyal, 164 N.J. 418, 437, 753 A.2d 1073, 1084 (2000) (discussing double jeopardy principles in a mistrial context); DeLuca, supra, 108 N.J. at 102, 527 A.2d at 1359-60; Dively, supra, 92 N.J. at 578, 458 A.2d at 504-05; State v. Farmer, 48 N.J. 145, 168, 224 A.2d 481, 493-94 (1966) (mistrial), cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967). See also State v. Georges, 345 N.J.Super. 538, 548, 786 A.2d 107, 114 (App.Div.2001) (mistrial), certif. denied, 174 N.J. 41, 803 A.2d 636 (2002); State v. Torres, 328 N.J.Super. 77, 91, 744 A.2d 699, 706 (App.Div.2000). Further, the State argues that nothing in the wording (which is narrow in scope), the intent, or the history of the New Jersey constitutional protection against double jeopardy suggests that its protection is broader or more expansive than that of its federal counterpart.
However, we note that in those cases in which the Court discussed the coextensive nature of double jeopardy under the federal and New Jersey constitutions in a context similar to that presented by this appeal, the United States Supreme Court was in the process of expanding the provision's protections. Moreover, as defendant argues, the Court has expressed dissatisfaction with the use of any one test to determine the existence of double jeopardy, as "none has proved to be entirely satisfactory" (State v. Gregory, 66 N.J. 510, 514, 333 A.2d 257, 259 (1975)) but, as early as State v. Hoag, 21 N.J. 496, 502, 122 A.2d 628, 631 (1956), aff'd, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913, reh'g denied, 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375 (1958) it had recognized the wide-spread use of a "same evidence" test.
As an intermediate appellate court, we are therefore confronted with the difficult determination of whether to adhere to the Court's existing interpretation of federal and state double jeopardy protections, set forth in Yoskowitz; DeLuca and Dively, or, without significant precedent to suggest that the Court would narrow or restrict the flexibility of its view of double jeopardy to accord with newly-established federal constitutional law, to forecast that it would do so in a state constitutional context. We find the latter course to be presumptuous, and, accordingly, follow Capak in holding that such a determination must be made by the Supreme Court, not by us. We accordingly view defendant's *1119 proofs in light of the "same conduct" test in determining whether state constitutional proscriptions against double jeopardy have been violated. We determine that they have not.
We find the Supreme Court's decision in DeLuca, supra, to be of particular relevance to the present case. There, defendant, whose blood alcohol content was .21%, struck and killed a pedestrian. After he was acquitted in the Law Division of death by auto, N.J.S.A. 2C:11-5, he moved for dismissal of a subsequent municipal court prosecution under N.J.S.A. 39:4-50 for driving while intoxicated (DWI). The Court concluded that the same elements did not comprise both crimes, and thus that the municipal prosecution was not barred by Blockburger. Id. 108 N.J. at 108, 527 A.2d at 1360. In discussing the second standard for the application of double jeopardy, the Court stated:
the question in the second prong was whether the evidence actually used to establish guilt in the first prosecution is identical to that that will be used in the second prosecution. If the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred.
[DeLuca, supra, 108 N.J. at 107, 527 A.2d at 1360 (citation omitted; emphasis supplied).]
Because the State contended that proofs of recklessness other than intoxication were offered in the death-by-auto case, and because that assertion could not be verified by the appellate record, the matter was remanded so that the trial court could review those proofs. The Court held: "If the State relied solely on intoxication as evidence of recklessness in the death-by-auto case, double jeopardy would bar the DWI prosecution. If, however, other evidence was adduced, the DWI prosecution will not be barred." Id. at 109, 527 A.2d at 1360-61.
In the present case, defendant was not charged in municipal court with any offenses connected with his theft of a motor vehicle. Thus, no constitutional principle bars his conviction in the Law Division following entry of a plea of guilty to theft by unlawful taking. Defendant also pled guilty in the Law Division to second-degree eluding, which requires proof that, while operating a motor vehicle, he knowingly fled or attempted to elude a police officer after receiving a signal to stop, and while doing so, created a risk of bodily injury to another person. N.J.S.A. 2C:29-2b; State v. Wallace, 158 N.J. 552, 560, 730 A.2d 839, 843 (1999); State v. Dixon, 346 N.J.Super. 126, 135-36, 787 A.2d 211, 217-18 (App.Div.2001), certif. denied, 172 N.J. 181, 796 A.2d 898 (2002). He pled guilty, as well, to second-degree aggravated assault while eluding, N.J.S.A. 2C:12-1b(6), a strict liability crime designed to increase the penalty for eluding when bodily injury results. We have previously set forth the factual basis for those pleas.
In municipal court, defendant had previously pled guilty, in relevant part, to reckless driving and traveling the wrong way down a one-way street. The factual basis for the one-way street charge is self-evident, and because it did not constitute the sole basis for defendant's plea to eluding and was irrelevant to his plea to the strict liability crime of aggravated assault while eluding, jeopardy did not attach as the result of that municipal court plea and conviction.
In contrast, it is not possible to determine the factual basis for the charge of reckless driving from the summons that was issued, which recites only the statutory violation; from the factual basis given for the plea, since there was none; or from general statements made by the municipal court judge, who confined his attention to the imposition of penalties, without any *1120 mention at all (except in connection with the receipt of stolen property) of the facts underlying the charges pending against defendant. Reckless driving can, of course, be proven by the same or fewer facts than those offered in the Law Division to establish the "creation of a risk of death or injury to any person" that elevates eluding to a crime of the second degree. DeLuca, supra, 108 N.J. at 109, 527 A.2d at 1360-61. However, if defendant is to succeed in obtaining dismissal of counts of an indictment on double jeopardy grounds, he must demonstrate that the first prosecution encompassed all the facts utilized in the second. State v. Ebron, 61 N.J. 207, 215-17, 294 A.2d 1, 5-6(1972)(establishing burden of proof). That is something that defendant cannot prove in this case as the result of the lack of any factual foundation for the municipal court pleas, and for that reason, his claim of double jeopardy, even if judged under the more expansive "same conduct" standard, must fail.

c. Statutory Double Jeopardy Protection

Defendant argues alternatively that the indictment should have been dismissed pursuant to N.J.S.A. 2C:1-10a(3), which provides statutory protection from double jeopardy by stating:
A prosecution of a defendant for a violation of a different provision of the statutes or based on different facts than a former prosecution is barred by such former prosecution under the following circumstances:
a. The former prosecution resulted in an acquittal or in a conviction as defined in section 2C:1-9 and the subsequent prosecution is for:
* * *
(3) The same conduct, unless (a) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil....
We note at the outset that defendant's claim to the benefit of New Jersey's statutory double jeopardy bar is precluded by the fact that, as we previously found, he cannot demonstrate the identity of the conduct supplying the foundation for the charges of reckless driving and eluding. Moreover, we accept the State's position that the motor vehicle statute prohibiting reckless driving, albeit quasi-criminal in nature, and the criminal statute making eluding a crime of either the second or third degree were intended to prevent substantially different harms or evils. To be sure, both focus on reckless driving and the dangers posed by such conduct. However, the eluding statute has the additional purpose of requiring adherence to the commands of law enforcement personnel, thereby enhancing their investigatory, crime prevention and other functions. See State v. Seymour, 289 N.J.Super. 80, 87, 672 A.2d 1273, 1277 (App.Div.1996), where we observed:
the [eluding] statute would have no meaning and be rendered ineffective if a driver of a vehicle was not required to stop when signaled to do so. There are many lawful reasons, criminal and non-criminal, for a law enforcement officer to signal a motorist to stop. See Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 715 (1973). See also State v. Goetaski [, 209 N.J.Super. 362, 365, 507 A.2d 751, 752-53 (App.Div.1986)]. The criminal penalty for failure to stop is to encourage compliance with the officer's signal.

d. Fundamental Fairness

In arguing that the indictment against him should have been dismissed as the *1121 result of considerations of fundamental fairness, defendant places principal reliance on the Court's decision in Gregory, supra, wherein it stated:
In the course of our opinion [in State v. Roller, 29 N.J. 339, 149 A.2d 238 (1959)] we pointed out that neither the same evidence test nor the same transaction test had worked with complete satisfaction and that while the court had been seeking the elusive ideal test it had in each instance endeavored fairly to protect the State's vital interest in bringing the guilty to justice while at the same time protecting the accused from multiple trials and punishment when in substance there had been but a single wrongdoing. 29 N.J. at 346, 149 A.2d 238[, 241-42]. In State v. Currie, [41 N.J. 531, 197 A.2d 678 (1964)], we noted the futility of the efforts extended towards the formulation of a single legal test to operate absolutely and inflexibly throughout the field of double jeopardy; and we stressed that in applying the prohibition against double jeopardy the emphasis should be on underlying policies rather than technisms and that the primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals. 41 N.J. at 539, 197 A.2d 678 [, 682-83].
[66 N.J. at 517, 333 A.2d at 260-61.]
In Gregory, defendant was successively prosecuted for sale to a police officer of a single packet of heroin taken from a supply in a bathroom medicine cabinet and then for possession and possession with the intent to distribute the larger quantity of heroin contained in the cabinet. In reversing the latter conviction, the Court held that, in circumstances in which both defendant and the State were fully aware from the outset of the sale of the small quantity of drugs and possession of the larger quantity, fairness dictated that the two prosecutions be joined, and that the State's withholding of crimes for later prosecution smacked of harassment and oppression that required that the subsequent prosecution be barred. Id. at 518, 333 A.2d at 261.
To the extent that defendant cites Gregory for the proposition that his motor vehicle offenses should have been joined with his crimes for purposes of prosecution in the Superior Court, we agree. See Muniz, supra, 118 N.J. at 326, 571 A.2d at 952 ("The policies of the common law strongly commend the joinder of lesser-included, as well as other related, offenses in a single criminal prosecution.") That was the intent of Directive No. 10-82 that we have discussed previously. However, we do not find the failure to have joined the two prosecutions, which involved offenses containing admittedly divergent elements, to have precluded defendant's prosecution in the Law Division on fairness grounds, particularly since it appears to us that nature of the charges pending in the municipal court did not automatically trigger notice to the prosecutor in accordance with Directive No. 10-82; the judge appears to have been unaware of the existence of defendant's indictment by a grand jury and certainly was not informed of the fact on the record; and defendant provided a misleading response when queried by the judge regarding the charges that were holding him in jail. Moreover, we have been presented with no evidence that would support the contention that defendant reasonably expected, by pleading guilty to the municipal charges, that he would have resolved his liability for eluding the police and, in doing so, causing serious injury to a passing bicyclist. We thus do not find it fundamentally unfair to defendant to have proceeded with his prosecution in the Law Division.

*1122 III.
We reject with little comment defendant's arguments that he was deprived of his constitutional right to counsel and self-representation and that his guilty pleas were invalid because his mental condition did not permit him to enter a voluntary, knowing and intelligent plea with knowledge of its nature and consequences (R. 2:11-3(e)(2)), which in any event were not preserved for appeal. See R. 3:9-3(f); State v. Szemple, 332 N.J.Super. 322, 328-29, 753 A.2d 732, 736 (App.Div.), certif. denied, 165 N.J. 604, 762 A.2d 218 (2000).
Defendant states that at a bail hearing before the sentencing judge, he sought reduction of his $100,000 bail, and he requested alternatively that he be assigned a different public defender as counsel or that he be afforded the right to represent himself, with stand-by assistance from counsel. The court denied defendant's request for a lowered bail, a decision that we find, in light of the factors set forth in State v. Johnson, 61 N.J. 351, 364, 294 A.2d 245, 252 (1972) and R. 3:26-1, to have constituted a proper exercise of the court's discretion. Additionally, the court denied defendant's request for assignment of new counsel, noting that an indigent defendant retains the right to counsel, but not to counsel of his choice. See State v. Coon, 314 N.J.Super. 426, 438-39, 715 A.2d 326, 332-33 (App.Div.), certif. denied, 157 N.J. 543, 724 A.2d 802 (1998). The court reserved decision on defendant's request to represent himself, suggesting that defendant discuss its implications with trial counsel, a suggestion in which counsel concurred. When defendant next appeared before the court and entered his pleas of guilty, he was in fact represented by new counsel, William Fetky, and he stated on the record that he was satisfied with Fetky's advice in the matter. Further, defendant did not again assert a request to represent himself. In these circumstances, we find defendant's request to represent himself, asserted only after he perceived that he would not prevail on his motion for assignment of new counsel, to have been abandoned.
We likewise reject defendant's contention that as the result of the fact that he was taking Depakote at the time that his pleas were entered, he lacked the capacity to enter into them. Defendant's mental condition was fully explored at the time of the plea, and the plea was then found to be knowingly, voluntarily and intelligently given. We find nothing in the record to suggest error in the court's determination in that regard, and defendant has offered nothing on appeal. State v. Lucas, 30 N.J. 37, 73-74, 152 A.2d 50, 69-70 (1959); State v. Norton, 167 N.J.Super. 229, 232, 400 A.2d 810, 811 (App.Div.1979). We find defendant's further claim that his pleas in the Law Division lacked a stated factual basis to be frivolous and unworthy of further comment. R. 2:11-3(e)(2). The trial judge was meticulous in taking the pleas, obtaining a factual basis for them, in defendant's own words, with a degree of care that is commendable.

IV.
As a final matter, we address defendant's sentence. Although we find no ground to disturb the court's determination to impose, as the plea agreement recommended, presumptive concurrent terms for second-degree eluding and aggravated assault while eluding under standards established by State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370, 386-87 (1984), we find as we stated at the outset of this opinion that the court, while honoring the plea agreement and sentence recommended by the prosecutor, erred in failing to impose an eight-five percent period of parole ineligibility with a three-year period of mandatory parole supervision pursuant *1123 to N.J.S.A. 2C:43-7.2 as part of defendant's sentence on his conviction for aggravated assault pursuant to N.J.S.A. 2C:12-1b(6). Accordingly, we remand the matter to permit defendant to accept an aggregate sentence of seven years with a legal period of parole ineligibility pursuant to NERA, to negotiate a new sentence recommendation or to withdraw his plea. State v. Smith, 372 N.J.Super. 539, 543, 859 A.2d 1229, 1232 (App.Div.2004).
The matter is remanded for further proceedings in accordance with this opinion.
NOTES
[1] Defendant's presentence investigation report states that the charge was "remanded to municipal court" on August 7, 2001. The basis for that statement is unclear.
[2] A municipal court has jurisdiction over fourth-degree crimes enumerated in chapter 20 of Title 2C. See N.J.S.A. 2B:12-18.
[3] Defendant was charged with burglary under Middlesex County Indictment No. 00-08-00873 on May 29, 2000. However on May 21, 2001, he was found not guilty following trial. Although at that time defendant received a sentence of 135 days for resisting arrest, the record indicates that the time set forth in the sentence had been previously served at the time sentencing occurred.
[4] We find no need to discuss the applicability of double jeopardy to crimes for which defendant was charged in the indictment, but to which he did not plead guilty.
[5] By its terms, our state constitution only bars re-prosecution "after acquittal." However, its protections have been interpreted consistently as co-extensive with those afforded under the federal constitution. See, e.g., State v. Churchdale Leasing, Inc., 115 N.J. 83, 107, 557 A.2d 277, 289 (1989); State v. DeLuca, 108 N.J. 98, 101-02, 527 A.2d 1355, 1357 cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); State v. Barnes, 84 N.J. 362, 370, 420 A.2d 303, 307 (1980); State v. Rechtschaffer, 70 N.J. 395, 404, 360 A.2d 362, 367-68 (1976).